Matter of the Petition of NORTUNA SHIPPING COMPANY, Owner of THE NORLANDA, for an order directing Isbrandtsen Company, Inc., Charterer of said vessel to Proceed to Arbitration.

NORTUNA SHIPPING COMPANY, Petitioner-Appellee,

v.

ISBRANDTSEN COMPANY, Inc., Respondent-Appellant.

No. 257, Docket 23903.

United States Court of Appeals Second Circuit.

Argued Feb. 8, 1956.

Decided March 27, 1956.

Writ of Certiorari Denied June 4, 1956.

See 76 S.Ct. 1028.

McNutt & Nash, New York City (James E. Freehill and Donald B. Allen, New York City, of Counsel), for appellee.

Lord, Day & Lord, New York City (Woodson D. Scott, New York City, of Counsel), for appellant.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

On November 12, 1948, appellee Nortuna Shipping Company made a Time Charter of its S. S. Norlanda to appellant Isbrandtsen Company, Inc. The charter party contained a clause providing for the arbitration of any disputes between the parties. The appeal is from an order made on October 3, 1955, granting Nortuna's petition for a direction that, pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, Isbrandtsen be required to proceed to arbitrate a dispute as to whether or not Nortuna was entitled to reimbursement from Isbrandtsen of an amount paid on September 29, 1950, in settlement of the claim of the owner of a tug for damages arising out of a collision between the tug and a bulkhead, as the S. S. Norlanda was being assisted by the tug while leaving the port of Le Havre, France, on January 18, 1949. Under the terms of the standard towing contract Nortuna, as owner of the towed vessel, was subject to absolute liability for any damage sustained by the tug.

Isbrandtsen opposes arbitration, alleging that Nortuna had waived the right to arbitrate this particular dispute by proceeding to an award with the arbitration of a number of other miscellaneous matters arising out of the charter party operation, and that the right to arbitrate the tug damage dispute was barred, either by the Statute of Limitations or by the laches of Nortuna.

■ That the right to compel arbitration under the Federal Arbitration Act may be waived is clearly established. E. g., American Sugar Refining Co. v. The Anaconda, 5 Cir., 138 F.2d 765; Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co., 7 Cir., 128 F.2d 411; William S. Gray & Co. v. Western Borax Co., 9 Cir., 99 F.2d 239; Radiator Specialty Co. v. Cannon Mills, Inc., 4 Cir., 97 F.2d 318, 117 A.L.R. 299; La Nacional Platanera, S. C. L. v. North American Fruit & S. S. Corp., 5 Cir., 84 F.2d 881; Rederiaktieselskabet Nidaros v. Steamship Owners Operating Co., D.C. S.D.N.Y., 25 F.Supp. 663. In these cases, however, the party held to have waived its right to arbitrate a dispute either had commenced suit in court, as in La Nacional Platanera, S. C. L. v. North American Fruit & S. S. Corp., supra, and Rederiaktieselskabet Nidaros v. Steamship Owners Operating Co., supra, or, if named as defendant in an action brought against him, had stipulated for some other mode of settlement, William S. Gray & Co. v. Western Borax Co., supra, or had answered on the merits or had set up a counterclaim, Radiator Specialty Co. v. Cannon Mills, Inc., supra. The principle involved is that invoking or actively assenting to the jurisdiction of a court, being manifestly inconsistent with an assertion of the right to arbitrate the same dispute, constitutes a waiver.

None of the cases above referred to control the situation before us now, as the thrust of Isbrandtsen's argument, on the claim of waiver, is that, having submitted once to arbitration it should not be made to do so again with respect to a dispute which existed and was known to Nortuna at the time the first arbitration was had.

■ But the reason why the waiver argument cannot prevail is, as held by the District Court, that the parties in effect agreed that there should be a separate arbitration of the dispute over the damage to the tug. The general demand for arbitration was made on February 8, 1950, and the award therein was handed down on November 7, 1952. Prior to all this, and before Nortuna had settled with the owner of the tug, there was an exchange of letters between the parties under the dates of August 24 and August 31, 1949, to the effect that the payment to the owner of the tug could be made "without prejudice to the question of ultimate liability as between shipowner and charterer" and that the dispute as to who should bear the loss would be arbitrated. We can find nothing in the record before us to indicate that this arrangement was abrogated or superseded by the later arbitration, where this particular dispute was apparently not considered or passed upon. As the payment to the owner of the tug was not made until September 29, 1950, and the demand for the arbitration which resulted in the award was made on February 8, 1950, it is a natural inference that the arrangement made in August, 1949, was to be left undisturbed. On this record we cannot upset as clearly erroneous the finding of the District Court that there had been no waiver by Nortuna.

■ Nor do we find any merit in the contentions of Isbrandtsen concerning the Statute of Limitations and laches, despite the fact that Nortuna failed to press for arbitration of the tug damage dispute until March 22, 1955.

We are told by appellant that New York law governs and are urged to follow Judge Clark's dissent in Reconstruction Finance Corp. v. Harrisons & Crosfield, 2 Cir., 204 F.2d 366, 37 A.L.R.2d 1117 certiorari denied 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368. The argument runs something like this: The Federal Arbitration Act specifies no time limitation on the right to an order compelling arbitration pursuant to the provisions of 9 U.S.C. § 4; as the agreement between the parties was made in New York and provided for arbitration "at New York," its interpretation and effect are governed by New York law; the vigorous and well-reasoned dissent of Judge Clark in the Reconstruction Finance Corp. case indicates that, according to New York law, after a lapse of more than six years, there is no longer any valid and enforceable contract, upon the basis of which arbitration can be demanded and that this view is supported by Hammerstein v. Shubert, 127 N.Y.S.2d 249, decided at Special Term of the Supreme Court, New York County, in 1953. In this connection it may be noted that, even in the majority view expressed in the Reconstruction Finance Corp. case the applicability of New York law was merely assumed, *arguendo*.

While there are interesting facets to this argument and there is at least the possibility that the question of the time within which arbitration may be demanded under the Federal Arbitration Act will be worked out in terms of federal law, the facts of this case made it unnecessary for us to probe into these matters. For appellant's entire argument is built upon the assumption that the time began to run from January 18, 1949, when the tug collided with the bulkhead in Le Havre. This plainly cannot be the controlling date even assuming, again *arguendo*, that the crucial date is when the matter in dispute between the parties arose, rather than the date of refusal to arbitrate, for the matter in dispute did not come into existence until September 29, 1950, when Nortuna paid the tug owner. Only then was there a fixed sum of money for which Nortuna could demand reimbursement from Isbrandtsen. Accordingly, the demand to proceed with arbitration, which was made on March 22, 1955, and the commencement of this proceeding to compel arbitration on June 17, 1955, were timely, even if § 48(1) of the New York Civil Practice Act is applicable.

■ The question of laches remains. It has been held that the right conferred by 9 U.S.C. § 4 is equitable, not

legal. See Marine Transit Corp. v. Dreyfus, 284 U.S. 263, 278, 52 S.Ct. 166, 76 L.Ed. 282. Thus, irrespective of whether the analogous statutory limitation may be used as a rough guide, petitioner may maintain this proceeding only if it has not been guilty of laches. Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743. Laches, however, may not be established by mere delay; some substantial prejudice must be shown. All that we can find here is the assertion that two of appellant's officers have died in the interval and that allegedly relevant documents are unavailable because held under an attorney's lien by the estate of appellant's former counsel. But there is nothing to indicate that the deceased officers had any knowledge of material facts not known to others and it is clear that the documents, which are not shown to have any bearing on the controversy, are not permanently beyond reach.

Affirmed.