**JAMES McWILLIAMS BLUE LINE, Inc., as charterer in possession of THE Barge PETROLEUM NO. 7, Libelant,**

v.

**ESSO STANDARD OIL COMPANY, Respondent,**

and

**Conners-Standard Marine Corporation, Respondent-Impleaded.**

United States District Court
S. D. New York.
April 13, 1956.

See also, 129 F.Supp. 36.

Macklin, Speer, Hanan & McKernan, New York City, proctors for libelant, Martin J. McHugh, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, proctors for respondent, Stephen J. Buckley, Raymond T. Greene, New York City, of counsel.

Purdy, Lamb & Catoggio, New York City, proctors for respondent-impleaded, Thomas J. Irving, New York City, of counsel.

CASHIN, District Judge.

This is an action by the libelant, James McWilliams Blue Line, Inc., as charterer in possession of the Barge "Petroleum No. 7", against the respondent, Esso Standard Oil Company, for damages sustained by the barge Petroleum No. 7. Respondent has impleaded the Conners-Standard Marine Corporation as owner of the Tug Maple Leaf.

### Findings of Fact

1. On October 6, 1950, libelant McWilliams, charter owner of Barge No. 7, time chartered it to respondent Esso. On October 9, 1950, pursuant to a towing charter agreement between Esso and Conners (impleaded respondent) the tug Maple Leaf picked up the Barge No. 7 at Bayonne, New Jersey.

2. Esso's towing charter agreement with Conners (owner) provided in part:

"Owner is liable to the extent of its legal liability in connection with or growing out of the service rendered, together with all liability to persons or parties in any way connected with or growing out of service rendered, * * *".

3. On October 30, 1950 the tug Maple Leaf, while in the process of towing the Barge No. 7 from Rochester· to Albany on the waters of the New York State Barge Canal System, undertook to turn the barge around at the junction of the Genessee River and the Barge Canal. In the course of executing this maneuver the Maple Leaf caused the stern of the Barge No. 7 to be grounded on the bank of the Genessee River. The Barge No. 7 sustained damage to its skegs. At that time the bargeman informed the crew of the tug Maple Leaf of the grounding.

4. On November 25, 1950 Esso returned the barge to libelant in its damaged condition. On October 1, 1953 libelant filed its libel against the respondent who was not served until December 16, 1953. On April 2, 1954 respondent impleaded Conners.

### Conclusions of Law

■ I. Libelant is entitled to a decree primarily against the impleaded respondent and secondarily against respondent.

■ The only real issue in this case appears to be the defense of laches raised by the impleaded respondent with respect to the respondent's petition. We are of the opinion that this defense is not supported either in fact or law.

Even assuming that the respondent had no action for indemnity against the impleaded respondent, and the New York State three year Statute of Limitations, Civil Practice Act, § 49, is to be considered, we think on the facts of this case any presumption of laches has been overcome.

■ There is not a scintilla of evidence to show that the impleaded respondent was in any way prejudiced by the delay in this case. The evidence does show on the· other hand that the respondent filed its petition within five months after it was served with the libel. Laches is an equitable defense and prejudice must exist nor can it be presumed if the fact is otherwise. Petition of Nortuna Shipping Co. (Nortuna Shipping Company v. Isbrandtsen Co., Inc.), 2 Cir., 231 F.2d 528.

■ In any event, respondent, by virtue of its relationship both written and implied with the impleaded respondent, pleaded and proved a claim for indemnity. Palazzolo v. Pan-Atlantic S.S. Corp., 2 Cir., 211 F.2d 277; Moran Towing & Transportation Co., Inc., v. Navigazione Libera Triestina, S.A., 2 Cir., 92 F.2d 37. It is apparently conceded that as to a claim for indemnity there is no question of laches.