In the Matter of the arbitration between
TSAKALOTOS NAVIGATION CORP., as agents for the owners of the S.S.
GENERAL TSAKALOTOS, Petitioner,
and
SONACO, SOCIEDAD INTERNACIONAL DE COMERCIO S.A.,
Respondent,
Under Charter Party dated
September 10, 1965.
No. 66 AD. 162.

United States District Court
S. D. New York.

Sept. 1, 1966.

Poles, Tublin & Patestides, New York City, for petitioner, Christ Stratakis, Patrick V. Martin, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for respondent, Thomas R. H. Howarth, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Petitioner moves pursuant to the United States Arbitration Act, 9 U.S.C. §§ 4–6 (1947), for an order directing respondent, a Spanish corporation, to proceed to arbitration and appointing an arbitrator to act for respondent. Petitioner is a New York corporation acting as authorized agent of the Chatham Shipping Co., a Liberian corporation, which owns the S.S. GENERAL TSAKA-LOTOS, a Greek flag steamer.

In an agreement dated September 10, 1965, petitioner and respondent entered into a charter party whereby respondent hired the S.S. GENERAL TSAKA-LOTOS. The charter provided for the vessel to carry 9,800 tons of grain from a United States port to one to three ports in Spain. The petitioner alleges that the vessel sailed from New Orleans on October 15, 1965 and arrived at Malaga on November 5, Tarragona on November 13, and Seville on November 21, 1965, and that during this period the vessel was on demurrage for 26 days, 5 hours and 38 minutes.[1] It is further alleged that respondent failed to pay the balance due for freight expenses and for demurrage. This is the main dispute before this Court, although there are other disagreements which are important to the Spanish suit discussed hereinafter.

On November 30, 1965, petitioner's agent wrote to respondent's agent proposing that respondent pay $10,000 for demurrage on account, $2,750 toward the freight charges with respondent agreeing to pay the remainder of the freight charge when discharge of the cargo was completed, and the submission to arbitration in New York of the demurrage and freight disputes as per the charter party. The charter party had incorporated by reference the New York Produce Exchange Arbitration Clause which provides:

> Should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.

Respondent claims that this letter constituted a demand for compliance with petitioner's proposals. Although the two translations of this letter from Spanish to English differ greatly, it cannot, by any means, be interpreted as anything more than a proposed settlement of the dispute subject to a counterproposal by respondent. No answer to this letter was received.

On December 1, 1965, petitioner's agent again wrote to respondent's agent advising it that a lien had been placed on part of the cargo in accordance with clause 8 of the charter party which provided:

> 8. Owners shall have a lien on the cargo for freight * * * [and] demurrage. * * * Charterers shall also remain responsible for freight and demurrage incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

The letter further stated that because the charterer refused to consider the owners' claim, there was no choice but to place the lien on part of the cargo be-

---

1. Demurrage is defined as compensation for the delay of a vessel when the charterer fails to load or discharge within the time specified by the charter. West Africa Nav., Ltd. v. Ore & Ferro Corp., 192 F.Supp. 651, 652 (S.D.N.Y.1960); In the Matter of Am. Anthracite & Bituminous Coal Corp., 171 F.Supp. 377, 384 (S.D.N.Y.1959), aff'd sub nom. American Anthracite & Bituminous Coal Corp. v. Leonardo-Arrivabene, S.A., 280 F.2d 119 (2d Cir. 1960).

cause discharge of the cargo was almost completed. It continued by stating that the owners requested arbitration immediately upon discharge of the cargo and that the owners would name their arbitrator shortly. There was no mention of possible court action to foreclose the lien. Respondent alleges in the affidavit of Mr. Diez, the managing director of SON-ACO, that the owners offered to arbitrate only the issues of extra freight and demurrage. I find that the letter of December 1, 1965 does not so limit the scope of the arbitration. Again, respondent did not reply.

In any event, on December 25, 1965, petitioner instituted proceedings in "Voluntary Jurisdiction" in the Court of First Instance Number Three of Seville, Spain. This was done pursuant to the Spanish Commercial Code, Arts. 665–66. Petitioner alleges that this was done solely to protect its lien for freight and demurrage.[2] On January 15, 1966, respondent appeared in the Seville proceedings. This had the effect of changing the proceeding to a litigated one (called "incidentes"), requiring the respondent to file a formal "opposition" which was done on February 9 or 10, 1966. With this, respondent interposed counterclaims for insurance premiums and cargo damage which were matters outside the scope of the freight and demurrage disputes. Petitioner alleges that it was forced to answer the "opposition" in order to preserve its lien. This is not denied by respondent. Accordingly, on April 5, 1966, petitioner filed an answer but did not assert any other claims against respondent. This proceeding is now awaiting consideration in the Spanish Court and, at the earliest, will not be heard until some time in September of this year.

Meanwhile, by letter dated January 24, 1966, attorneys for petitioner demanded that the claims be arbitrated in accordance with the charter party, named its arbitrator and demanded that respondent appoint its arbitrator within seven days. Upon failure of respondent to reply, a petition was filed in this Court, requesting the relief hereinbefore mentioned. The petition and notice of motion were served on respondent by registered mail in Spain.

There are two main issues before the Court:

1. Is the question of waiver for the Court or for the arbitrators to determine; and

2. If the Court is to determine waiver, does petitioner's action in the Spanish proceedings constitute a waiver of arbitration.

■ As to the first issue, the decisions of this Circuit have presented varying views. Compare World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362 (2d Cir. 1965), with Chatham Shipping Co. v. Fertex S.S. Corp., 352 F.2d 291 (2d Cir. 1965). However, the decisions can be reconciled. In the *World Brilliance* decision, supra, the Court held that the issue of waiver is for the determination of the arbitrators. There, the defense of waiver was based on petitioner's failure to seek arbitration within the time specified in the contract. In the *Chatham Shipping* case, supra, the respondent based its claim of waiver on the filing of a libel by the shipowner and the subsequent demand for arbitration by the same party. The Court, without directly addressing itself to the question of whether the issue of waiver is to be determined by the arbitrator, found that, in fact, there was no waiver by the filing

**2.** Although the affidavits are not clear, it appears that petitioner could have proceeded in two ways: (1) By "Preventative Attachment"; and (2) By "Voluntary Jurisdiction." Under the former, the merits of the claim do not come before the Court since it is only used as an auxiliary remedy to obtain security for a subsequent award by the Court or arbitrators. Under the latter, the merits of petitioner's claim are determined by the Court. As part of the "Voluntary Jurisdiction" proceeding, petitioner requests the deposit and sale of the seized merchandise. Whether petitioner has acted correctly in pursuing the remedy it chose rather than the alternative method will be discussed more fully hereinafter.

of the libel. From this and the following decisions, I conclude that the issue of waiver, at least where it is based on the commencement of other Court action, is for the Court to determine. See Cornell & Co. v. Barber & Ross Co., 360 F.2d 512 (D.C.Cir. 1966); Almacenes Fernandez, S.A. v. Golodetz, 148 F.2d 625, 161 A.L.R. 1420 (2d Cir. 1945); Graig Shipping Co. v. Midland Overseas Shipping Corp., 65 Ad. 924 (S.D.N.Y. April 5, 1966); Instituto Cubano de Establizacion del Azucar v. The S.S. Rodestar, 143 F.Supp. 599 (S.D.N.Y. 1956); cf. Nortuna Shipping Co. v. Isbrandtsen Co., 231 F.2d 528 (2d Cir.), cert. denied, 351 U.S. 964, 76 S.Ct. 1028, 100 L.Ed. 1484 (1956); China Union Lines, Ltd. v. Steamship Co. of 1949, 136 F.Supp. 597 (S.D.N.Y.1955). Determination of waiver by other conduct would appear to be within the province of the arbitrator. See World Brilliance Corp. v. Bethlehem Steel Co., supra; Reconstruction Fin. Corp. v. Harrisons & Crosfield, Ltd., 204 F.2d 366, 37 A.L.R.2d 1117 (2d Cir.), cert. denied, 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953); Lowry & Co. v. Steamship Le Moyne D'Iberville, 253 F. Supp. 396 (S.D.N.Y. 1966); Sucrest Corp. v. Chimo Shipping Ltd., 236 F. Supp. 229 (S.D.N.Y. 1964).

Having thus determined that the Court is to decide the issue of waiver here, I now turn to the second posed question: Does petitioner's action in the Spanish proceedings constitute a waiver of arbitration?

In Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 410(2d Cir. 1959), appeal dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960), Judge Medina stated that, "[A]ny doubts as to the construction of the [United States Arbitration] Act ought to be resolved in line with its liberal policy of promoting arbitration * * * to accord with the original intention of the parties * * *." The Court further declared that no waiver can be found unless the party acts in a manner inconsistent with the right to arbitrate. Id. at 412. See

Nortuna Shipping Co. v. Isbrandtsen Co., supra 231 F.2d at 529.

The classic statement as to when a party will be deemed to have waived arbitration by inconsistent court action was made in The Belize, 25 F.Supp. 663, 664 (S.D.N.Y. 1938), appeal dismissed, 101 F.2d 1005, 2d Cir. 1939) (per curiam), where Judge Patterson said:

> When a party who has agreed to arbitrate any controversy that may arise prefers to take a controversy to court in the ordinary way, there comes a time in the course of the litigation when it would be unfair to permit one side to resort to arbitration over the protest of the other. That time is reached when the defendant files an answer on the merits, joining with the plaintiff in rejecting arbitration and tendering the controversy to the court for trial.

■ Although this statement has been often relied upon, it can by no means be considered a rule of law and should be simply used as a rule of construction subject to a party's proof that the action taken was not inconsistent with the right to demand arbitration at a later time. In other words, while the joining of issue in a law suit will usually be inconsistent with arbitration, it does not follow that it will in all instances be so.

■ Applying this reasoning to the case at bar, I find that petitioner by proceeding in the Seville litigation has not acted inconsistently with its right to arbitrate. In reaching this conclusion, I am guided by clause 8 of the charter party which has been hereinbefore set forth. That clause in essence states that liability for freight and demurrage incurred at port of discharge will be conditioned on the owners' exercising their lien and attempting to sell the liened cargo. If the owners had not exercised the lien or had not attempted to sell the cargo pursuant to the lien, they would have had no claim against the charterers for freight and demurrage. Although the affidavits are far from clear as to what action the owners could have taken, it is clear that some type of Court action

had to be taken in Spain to comply with clause 8 so that the owners could sell the cargo. Accordingly, I reject respondent's argument that a mere possessory lien would have been sufficient to protect petitioner's interests. Furthermore, petitioner obviously manifested an intent all through the negotiations to reserve its right to arbitrate. Clearly, petitioner was forced to act by respondent's failure to answer its proposals. I cannot hold that petitioner's action taken in accordance with the charter party was inconsistent with its right to insist upon arbitration of the disputes.

Having decided this, I turn to respondent's contention that petitioner could have proceeded by "preventative attachment." (See footnote 2.) If petitioner had so proceeded, as stated in the affidavit of Don Arturo Gil de Santivanes y Baselga (submitted by respondent), petitioner could not have sold the goods until the termination of the controversy. Although this would appear to be consistent with clause 8, I fail to see why petitioner should be limited to this procedure since it would tie up the goods for a longer period of time, subject them to possible spoilage, or place petitioner at the mercy of market fluctuation. If petitioner has two alternatives which would both be consistent with its right to arbitrate, it should not be penalized for using the more favorable expedient. Further, as alleged by petitioner and not refuted by respondent, petitioner could only respond to the "opposition" or lose its lien. Such conduct cannot be deemed inconsistent with petitioner's demand for arbitration.

Therefore, keeping in mind Judge Medina's language in Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra, even if I had determined that petitioner's conduct in the Spanish proceedings was questionable, I could not say that the conduct was clearly inconsistent with the right to arbitrate, and, accordingly, the parties should proceed to arbitration.

Respondent's brief in opposition to petitioner's motion states that petitioner has relied on Section 8 of the United States Arbitration Act, 9 U.S.C. § 8. No-

where in petitioner's moving papers or memorandum in support of the motion do I find such a contention. Petitioner relies on clause 8 of the charter party rather than § 8 of the Act.

Accordingly, respondent is ordered to select an arbitrator and notify petitioner of its choice within ten (10) days of the date of this order, and arbitration is to proceed in accordance with the aforementioned charter party without undue delay.

It is so ordered.