William L. Underwood, Jr., J.
This is a motion by the respondent, Brentwood Teachers Association (“ Association”) for leave to reargue a prior application of the petitioner, Brent-wood Union Free School District, Town of Islip, New York (“ Board ”) which resulted in a judgment of this court staying arbitration.
This motion brings up for review and reconsideration of the following issues: (1) whether the contractual elimination of the denial of tenure as An arbitrable grievance precludes arbitration of the Association’s claim; (.2) whether the court or the arbitrator determines questions of compliance with the conditions precedent to arbitration, contained in a collective bargaining agreement; (3) whether the Association waived its right to arbitration by commencing an action for a permanent injunction,
*759 THE CHRONOLOGY OF EVENTS
April 1, 1974: The probationary teacher, Warren Wayler (“ Wayler ”), was notified by letter of the principal that he was recommending that the Board not issue a salary agreement to Wayler for the 1974-1975 school year, and “ Therefore, it will be best for you to submit a resignation effective June 30,1974.”
May 28, 1974: Wayler was notified by the Superintendent of Schools that he would not recommend Wayler for employment during the 1974r-1975 school year, and that a meeting would be held on July 2,1974, by the Board to consider the superintendent’s recommendation to terminate Wayler’s probationary employment.
June 10, 1974: In an action commenced by the Association and Wayler for a permanent injunction against the Board and the superintendent, the Association and Wayler by way of order to show cause returnable on July 2, 1974 (the date the Board was to consider the recommendation of the superintendent to discharge Wayler) moved for a preliminary injunction against the Board and the principal, to enjoin them from taking any steps to discharge Wayler.
• June 13, 1974: Based upon a level I grievance instituted by Wayler, the principal rendered a written response, finding that the proposed termination of Wayler’s employment for the 1974-1975 school year was in accord with the “ Evaluation Procedure as outlined in the Contract Agreement * * * Article 9, Section D ”, and that therefore Wayler’s grievance was invalid. The -section of the contract agreement referred to in the principal’s letter, provides for total evaluation, in addition to formal lesson evaluations, -of a teacher’s performance, including, but not limited to, “ teacher-staff relationships, professional preparation and growth, teacher-community relations, and contribution to general school services.”
July 9, 1974: A demand for arbitration dated July 3, 1974, served by the Association, was received by the Board.
July 19, 1974: The court rendered its decision denying the motion for a preliminary injunction, and granted a cross motion to dismiss the action for a permanent injunction.
July 20, 1974: The Association filed an improper practice charge against the Board -with the Public Employment Relations Board (“ PERB ”), pursuant to section 209-a (.subd. 1, par. [d]) of1 the Public Employees’ Fair Employment Act. (Civil Service Law, art. 14.)
July 26,1974: A written decision was rendered by the superintendent pursuant -to the level II grievance, dismissing the *760 grievance, upon the ground that the Board had retained the right in the collective bargaining agreement to dismiss a teacher for cause; that denial of tenure was not a valid grievance; and that the grievance was not instituted within the 30-day period. prescribed in the agreement, measured from the date of the principal’s letter which requested Wayler’s resignation.
I. ARBITRABILITY
The Association argues that the issue sought to be arbitrated is not the denial of the tenure, but rather, a termination of Wayler’s services in violation of the terms of the collective bargaining agreement covering the 1973-1975 school years.
Article 5 (subd. G-, pars. 3, 4) of the agreement entitled “ Class Size and Job 'Security ’ ’, to the extent here pertinent, provide :
1 ‘ 3. All persons represented by this Unit and employed during the school year 1972-1973 * * * are guaranteed jobs without loss of pay or benefits during the duration of this agreement. 4. Notwithstanding the above, the District shall still retain the rights provided in the Education Law to dismiss a teacher for cause ’ ’.
Article 9 of the agreement provides for the evaluation of all teachers, including probationary teachers, and mandates that a probationary teacher be given a copy of the “ Tenure Report ” containing his evaluation, which he is entitled to discuss with the administrator who has submitted it. Under subdivision D of this article, notification to a probationary teacher as to his status for the ‘ ‘ coming year ’ ’ takes into account the evaluation procedures. Such notice may be given in the form of a letter written by the principal or the administration. Paragraph 3 provides that “ While it is understood that the decision to retain or dismiss a non-tenure teacher rests solely in the hands of Administration and the Board of Education, a non-tenure teacher may request, through his building principal, to further discuss with the Superintendent or the Board of Education, a decision affecting himself”. (Emphasis added.)
The court is of the opinion that the collective bargaining agreement contains conflicting provisions, and it is not clear therefrom whether the Board did in fact retain its right to discontinue the services of a probationary teacher at any time during the probationary period, by a majority vote of the Board (Education Law, § 3012). A conflict exists primarily between the “Job Security” clause of the agreement, and the paragraph which purports to vest the decision of whether a probationary teacher should be retained or dismissed, solely, in the Board. There is also confusion in the decisions rendered *761 by the principal and superintendent. The principal in his report dated June 13, 1974, spoke in terms of dismissal based upon evaluation. The superintendent’s report dated July 26, 1974, not only concerned itself with dismissal of a probationary teacher for cause, but also spoke to a “ denial of tenure.”
Thus, whether or not the “Job Security ” clause of the collective bargaining agreement relied upon by the Association is sufficient to support its contentions, and whether or not cause must be demonstrated before the probationary employment of1 Warren Wayler may be terminated, or whether or not the Board had sufficient cause to do so, are all questions of fact and interpretation, which, under the broad language contained in the arbitration clause of the agreement, would ordinarily be determined by the arbitrator, and not by the court. (Matter of Legislature of County of Rensselaer [Allen], 44 A D 2d 628; Matter of Exercycle Corp. [Maratta], 91 N Y 2d 329.)
hi COMPLIANCE WITH CONDITIONS PRECEDENT TO ARBITRATION
A rather recent and thorough discussion of the problem of whether the court or the arbitrator should determine questions of timeliness and compliance with step-by-step grievance pror cedures, may be found in Matter of Guilderland Cent. School List. (Guilderland Cent. Teachers Assn.) (45 A D 2d 85, 87). It is apparent that the authorities are divided on the question; however, the court agrees with the conclusion reached in Guilder-land that the “ tendency seems to be, at least in the absence of a very narrow arbitration clause or an express provision making compliance with contractual time limitations conditions precedent to arbitration, to treat contractual time limitations, and especially those relating to the step-by-step grievance procedure, as matters of procedural arbitrability for the arbitrators ’ ’.
The agreement provides for a rather extensive, and apparently time-consuming, grievance procedure which comprises four steps, or levels. The first three levels must be exhausted before resort may be had to arbitration on the fourth level.
The provisions for the grievance procedure are preceded by a clause entitled “ Time Limits ”, which reads, under paragraphs 1 and 2, as follows: “ 1. iSince it is important to good relations that grievances be processed as rapidly as possible, every effort shall be made by all parties to expedite the process. The time limits specified for either party may be extended only by mutual agreement. 2. No written grievance shall be entertained as described below, and such grievance shall be deemed waived unless written grievance is forwarded at the first available level *762 within thirty (30) school days after the teacher knew or should have known of the act or condition on which the grievance is based.”
The arbitration clause itself provides that “ In matters concerned with the terms and conditions of employment covered by this Agreement, .the Association, after a decision at Level in * * * may submit the grievance to arbitration. ”
Since the arbitration clause is a broad one, and does not expressly make compliance with the contractual time limits a condition precedent to arbitration, the court holds that the questions of timeliness and compliance with the level-by-level grievance procedure are questions of “ procedural arbitrability”, which ordinarily, would be left to the arbitrator. (Matter of Long Is. Lbr. Co. [Martin], 15 N Y 2d 380.)
m. waiver
There are a multitude of cases dealing with the problem of whether a party waives arbitration by commencing a court action or proceeding. The following discussion of the cases dealing with this issue is not intended to represent an exhaustive study of this area of the law, but is intended to point up some of the the views expressed by the courts.
The concept of waiver of one’s right to arbitrate was recognized by the Court of Appeals as early as 1923, when in the case of Matter of Zimmerman v. Cohen (236 N. Y. 15), the court held that the plaintiff by bringing an action for breach of contract, without making reference in the complaint to the right to arbitrate, is deemed to have made an election to have the dispute settled, not by arbitration but in a court of law. The court stated at page 19: “ The Arbitration Law was passed to provide a means for enforcing an agreement to arbitrate; it did not otherwise change the law of contracts which is applicable to such an agreement as to other terms and conditions. This provision, therefore, to arbitrate could have been modified by a subsequent agreement based upon a consideration, or waived or abandoned by the agreement or action of the parties.” (Emphasis added.)
Even more significant is the court’s observation that “ The Arbitration Law was passed to expedite and facilitate the settlement of disputes and overcome the delay caused by litigation. It was not intended that such law should be used as a means of furthering and extending that delay.” (Matter of Zimmerman, supra, pp. 20-21.)
In Matter of Ladin (D. & C. Textile Corp.), (20 A D 2d 8, affd. 14 N Y 2d 781), a waiver of arbitration was hot found to exist *763 where the court action was not brought against the same party as against whom arbitration is sought. Then the court enunciated the principle that generally speaking, a waiver does' not constitute a bar to arbitration unless the party “ advisedly gives up the right ”, however, the court went on to point out that (p. 9): “ Nevertheless, there are certain situations where conduct inconsistent with the maintenance of a right is held to show an abandonment of that right despite the desire to retam it.” (Emphasis added.) In a dissenting opinion written by Mr. Justice Charles D. Breitel, illustrations of instances in which arbitration was deemed waived were cited. Thus, as pointed out by Justice Breitel, waiver has been held to occur even where the person seeking arbitration had merely sought to protect his interest by filing a mechanic’s lien (see, also, Matter of Manitt Constr. Corp. [J. S. Plumbing & Heating Corp.], 50 Misc 2d 502).
In Malan Constr. Corp. v. Allis-Chalmers Mfg. Co. (35 A D 2d 788), it was held that the action of the vendor of certain equipment in foreclosing upon his unpaid seller’s lien, constituted a waiver of his right to arbitration of arbitrable disputes arising from the contract of sale.
. It was held in Matter of United Paper Mach. Corp. (Di Carlo) (19 A D 2d 143), that where the plaintiff, after service of his demand for arbitration, commenced a plenary action for the same relief, such conduct represented a positive and unequivocal election to ignore plaintiff’s contractual right to arbitration and to seek to resolve all of plaintiff’s claims in the court.
It appears that the mere filing of a demand for arbitration will not avoid the rule set forth in the Zimmerman case (236 N. Y. 15, supra), and it makes little difference that the bare maneuver of making a demand for arbitration prior to the commencement of a court action, or thereafter, precludes a finding of waiver. (Matter of Scheck [Motor Vehicle Acc. Ind. Corp.], 40 Misc 2d 575.)
The rationale underlying waiver of arbitration, is not punitive in nature. Waiver is invoked to prevent dual process and an abuse of both the arbitration process and the courts. (Denihan v. Denihan, 34 N Y 2d 307, 311.)
To be sure, waiver cannot be found unless the claims sought to be redressed in the judicial proceedings embrace the same issues for which arbitration is sought. (Matter of Redmond, 39 A D 2d 527.)
Here, the grievance set forth in the Association’s demand was “ the attempted, improper discharge of Warren Wayler ”. In the action for a permanent injunction, the Association, inter *764 alia, alleged that the Board’s attempt to terminate Wayler’s employment constituted a violation of the collective bargaining agreement which was referred to in, and annexed to the complaint. The additional allegation that an improper practice charge was filed with PERB by .the Association does not alter the situation, since the ultimate relief sought in the action included a ‘ ‘ permanent injunction, prohibiting defendants from violating the contract ”,
In rearguing the motion, the Association skirts the issues arising from the commencement of its action for a permanent injunction, and dwells primarily upon the theory that the lodging of an improper practice charge against the Board with PERB and its motion for a preliminary injunction, did not manifest an intention to abandon arbitration. To this extent, the court agrees with the Association; however, these contentions fail to dispel the legal effect of the Association’s action for a permanent injunction which was commenced prior to the filing of the charge with PERB on June 20, 1974; prior to the decision by the principal rendered on June 13, 1974 in response to the level I grievance ; and prior to the service of a demand for arbitration.
Moreover, advancement to arbitration required compliance by the Association with a level III hearing before the Board. The Association’s failure to proceed with the level III hearing is consistent with a finding of waiver of arbitration. In its verified petition submitted on the original motion, the Board averred that “ A request by the respondent to omit a Level III hearing and go directly to Level IV (arbitration) was denied”. The Association’s contention contained in its memorandum of law submitted herewith, that the superintendent agreed to 11 proceed beyond ’ ’ level III, lacks probative value.
This is not to say that Warren Wayler and the Asosciation are without a remedy. The dismissal of the complaint for insufficiency does not preclude another action or court proceeding in the same matter, and upon the same issues. (6 Carmody-Wait, New York Practice [2ded.], § 38.44, p. 417.)
Accordingly, the Association’s motion for leave to reargue is granted, and, upon the reargument contained herein, the court adheres to its original determination granting the Board’s application to stay arbitration, with leave to the Association in proceeding in this court by way of an appropriate action or article 78 proceeding for the relief sought by arbitration. The judgment entered in the original proceeding shall be deemed modified in accordance with this memorandum.