363 So.2d 671 (1978)
STANDARD COMPANY OF NEW ORLEANS, INC.
v.
ELLIOTT CONSTRUCTION COMPANY, INC., et al.
ELLIOTT CONSTRUCTION COMPANY, INC.
v.
DIVISION OF ADMINISTRATION, State of Louisiana, Legal Successor to the Capital Outlay Budget Board, Through the Department of Facility Planning and Control.
No. 61822.
Supreme Court of Louisiana.
October 9, 1978.
Rehearing Denied November 9, 1978.
*672 Thomas W. Prewitt, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., Gordon A. Pugh and Charles W. Lamar, III, Breazeale, Sachse & Wilson, Baton Rouge, for Elliott Const. Co., Inc., applicant.
William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, First Asst. Atty. Gen., Robert E. Redmann, Asst. Atty. Gen., Jay H. Kern, Staff Atty., Dept. of Justice, State of La., New Orleans, for Div. of Administration, etc., et al., defendant-respondent.
DIXON, Justice.
Two cases have been consolidated and are before us.
A general contractor filed suit under R.S. 9:4201 et seq., asking the trial court to order the State of Louisiana to arbitrate a claim for equitable adjustment on a construction contract. The Nineteenth Judicial District Court for the Parish of East Baton Rouge granted an order requiring the State to arbitrate the claim brought by the general contractor in suit 205,827. The trial court also denied a motion to stay arbitration proceedings filed by the State in another suit (180,491) previously filed by a subcontractor in which the general contractor filed a third party demand against the State. The State appealed both decisions and the Court of Appeal stayed the proposed arbitration and reversed the trial court's two orders to arbitrate, holding that: (1) the court and not an arbitrator must decide whether the arbitration provision had been waived; (2) the obligation to arbitrate, once waived, could not be revived; and (3) the general contractor had waived the right to require the owner to arbitrate. We granted the general contractor's application for writ of certiorari to review the Court of Appeal decision.
These cases arise from the construction of the Southern University Minidome by Elliott Construction Company, Inc., the general contractor under a contract with the predecessor of the Division of Administration, State of Louisiana. During the course of construction, the State's architect, August Perez & Associates, Inc., rejected the work of the roofing subcontractor, Standard Company of New Orleans, Inc., on aesthetic grounds and because the roof leaked. The roofing subcontractor left the job and filed suit (180,491) against Elliott and the State to collect the unpaid balance on its subcontract. Elliott contracted with another roofer to replace the roof on the Minidome and reconvened against the original roofer for damages due to its breach of the roofing subcontract.
After the Minidome was completed and accepted by the State, Elliott filed with the architect a claim for equitable adjustment in contract time and money, asserting that the State was indebted to Elliott in excess of the contract sum for damages, because of *673 the State's interference with Elliott's planned sequence of construction activities and the State's withholding or misrepresenting information concerning sub-surface conditions at the worksite. The filing of these claims with the architect was in accordance with the procedures established by the contract. Two months after submitting the claim to the architect, Elliott filed its third party demand against the State in suit 180,491. In addition to Standard, Elliott and the State, the parties in suit 180,491 include the major suppliers of roofing components (The Celotex Corporation and National Gypsum Company), the architect and the sureties and insurers of several principal parties.
Perez issued its decision on the claim and Elliott invoked arbitration; the State then filed a motion in suit 180,491 in which it requested an order that Elliott show cause why it had not waived arbitration and should not proceed to litigate the claim. The trial court denied the State's motion, and Elliott then sought to compel the State to proceed with arbitration in suit 205,827. After a hearing in this latter suit, the trial court ordered the State to proceed with arbitration. The State appealed both decisions to the Court of Appeal, which reversed the trial court in both cases and entered judgment denying arbitration.
Applicant, Elliott, contends that the Court of Appeal erred in ruling Elliott waived its right to submit the claim to a panel of arbitrators and in not following Bartley, Inc. v. Jefferson Parish School Board, 302 So.2d 280 (La.1974), where this court held that a question of waiver of the right to claim arbitration should be decided by the arbitrator and not the court.
The trial court relied on the Bartley case and found that the issues before it were (1) whether an agreement to arbitrate had been made, and (2) whether the opponent had refused or failed to comply. R.S. 9:4203.[1] The trial court held that affirmative answers to both questions left it no authority than to order arbitration.
The Court of Appeal disagreed with the trial court's conclusion and quoted from R.S. 9:4201,[2] which provides in part that the provision to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The Court of Appeal interpreted that provision to mean that the court is not required to order arbitration under R.S. 9:4203 if there are grounds under R.S. 9:4201 for revocation, and reasoned: "It follows, necessarily, that the court must consider and rule upon any contention that such ground exists. Certainly, the State is contending that waiver is a ground for revocation." Standard Company of New Orleans, Inc. v. Elliott Construction Co., Inc., 359 So.2d 224, 226 (1st Cir. 1978).
Continuing, the Court of Appeal noted the recent decision of George Engine Co., Inc. v. Southern Shipbuilding Corp., 350 So.2d 881 (La.1977), where this court held that the court, not the arbitrator, had to decide the validity of the contract attacked for lack of consent and that it would be absurd to require arbitration under a contract *674 that did not legally exist. We find the Court of Appeal erred when it concluded, "we believe there should be a similar result if the arbitration provision has been waived."
In George Engine, supra, the issue was whether a party to a contract containing an arbitration clause may sue to rescind that contract in a court because the contract is, and was, void ab initio. George Engine involved the invalidity of the entire contract of which the arbitration clause was a part, and the court noted that by its very terms § 4201 presupposes the existence of a valid contract as a basis for invoking arbitration. In George Engine this court recognized that arbitration finds its principal support in the knowledge, experience and expertise of the arbitrator which qualify him to decide factual questions regarding performance of contractual obligations. Also, arbitration, as contrasted to litigation, can resolve quickly disputes over performance of contracts, and thus mitigate damages and allow parties to continue performance under the contracts. But the court found that arbitration serves neither of these functions where an entire contract is sought to be rescinded, because the courts can better resolve the legal issues which go to the validity of a contract.
The only grounds for judicial inquiry under § 4201 are those "as exist at law or equity for the revocation of any contract." Elliott correctly states that neither the State in its brief, nor the Court of Appeal in its opinion, treat the entire contract as revoked. The validity of the contract is not disputed, and the instant case is not a question of the revocation of the contract, as was the situation in the George Engine case. The Court of Appeal's extension of George Engine to conclude that "there should be a similar result if the arbitration provision has been waived" does not follow from our reasoning in George Engine. By extending judicial inquiry beyond the validity of the contract containing the arbitration agreement to pre-arbitration inquiry of issues of waiver of an arbitration agreement in a valid contract, the court would undercut the benefits of arbitration, which is favored by Louisiana public policy. There is a significant legal and practical distinction between the validity of a contract ab initio that was questioned in George Engine and the waiver of the right to enforce the arbitration agreement clause of a valid contract because of actions of a party after the contract was performed.
The Court of Appeal in the instant case did not properly apply the holding of Bartley, Inc. v. Jefferson Parish School Board, supra. In Bartley the subcontractor and owner contended that the general contractor's demand for arbitration, pursuant to the same AIA arbitration agreement as the instant case, was premature because he had not referred the claim to the architect before making demand. They also contended that the general contractor waived his right to arbitrate. In answer to these contentions, this court found that the claims of prematurity and waiver were questions of procedural arbitrability, and when a party sues to enforce an arbitration agreement, the courts should not decide these questions without requiring submission to arbitration. In Bartley, 302 So.2d at 283, the court concluded that the issues of waiver and prematurity address themselves to the arbitrator, and they cannot be utilized to prevent the aggrieved party from securing an order directing arbitration, as required by § 4203.
The Court of Appeal in the present case distinguished Bartley, noting that this court called the claims of prematurity and waiver questions of "procedural arbitrability" and that this court spoke of the failure to refer the claims to the architect before demanding arbitration, as was required by the contract in Bartley. The Court of Appeal reasoned that "the question involved was one of failure to conform to the procedure rather than one of a basis for revocation of a contract." We agree that the question involved in the present case is not one of failure to conform to the procedure, but we disagree that the question involved is "one of a basis for revocation of a contract." Waiver of the obligation to arbitrate is not a ground for revocation of an entire contract. *675 Revocation of the contract is not at issue in this case.
It is not necessary to discuss the Court of Appeal's finding that the obligation to arbitrate, once waived, cannot be revived over the objections of the opponent; the record does not support the Court of Appeal's finding that Elliott has waived the obligation to arbitrate.
Waiver of a party's right to require arbitration by instituting a court action will depend on the circumstances of each case, and whether the party indeed abandoned his right to insist upon arbitration by resorting to court procedure. Domke on Commercial Arbitration, § 19.01. Waiver is usually defined as a voluntary and intentional relinquishment or an abandonment of a known claim. Breaux v. Laird, 230 La. 221, 88 So.2d 33 (1956).[3] Although there is a split in authority, numerous courts in other jurisdictions have found that the resort to court proceedings was not a waiver or voluntary and intentional relinquishment of the obligation to arbitrate.[4]
In the instant case, the court cannot find that Elliott waived its obligation to arbitrate by filing the third party demand against the State in the subcontractor's suit 180,491. First, the issues in the suit and the *676 claim for equitable adjustment are separate and distinct. The claims in suit 180,491 involve issues of liability and damages in connection with the original roofing and subsequent re-roofing of the Minidome. The claims for equitable adjustment involve issues of liability and damages in connection with interference with construction method and sequence, change in proposal for floorslab delay, misrepresentation about sub-surface conditions, synthetic flooring, and excusable delays necessitating extensions of time. Elliott discussed the roofing problems as one of the excusable delays in its claim to the architect but only requested adjustment in the contract completion date.
Second, the evidence, does not indicate waiver or a voluntary and intentional relinquishment of a known claim. Whether the rejection of the roof by the architect for aesthetic reasons (as well as improper application and failure to waterproof) could be arbitrated is questionable because the arbitration agreement excepted from arbitration the architect's decision on matters relating to artistic effect.[5] Also, other parties in suit 180,491 would have a valid objection to arbitrating issues in the roof litigation along with all nonrelated issues in the claim for equitable adjustment. Elliott contends that it filed its third party action against the State in 180,491 nearly two years after litigation began and one and a half years after discovery began, to preserve its rights against the State in what appeared to be a nonarbitrable issue. Elliott's contention does not show voluntary and intentional relinquishment of a known right.
Third, the State does not appear to have been misled to its detriment. The parties apparently treated the issues in litigation separate from the issues in the claim. In the claim, Elliott discussed the roofing litigation but did not claim damages for the issues in litigation. The written response to the claim by the architect recognized the issues in litigation and excepted that part of Elliott's claim until judgment in suit 180,491. Also, correspondence between the parties indicate that the issues were considered separate.
In sum, the evidence indicates that the issues in suit 180,491 and the claim are separate and distinct; that Elliott did not voluntarily and intentionally relinquish a known right; and that the State was not misled to its detriment or injury by Elliott's actions. If, as the State contends, there is any overlapping, similar and inseparable quality in these claims, then the State has remedies to prevent any possible double recovery. If the claim for equitable adjustment is arbitrated before suit 180,491 is decided, then under C.C.P. 1005, the State can plead arbitration and award as a defense. If the issues in suit 180,491 are heard before or simultaneously with the claim, then R.S. 9:4210 provides that a court shall vacate any award where the award was procured by corruption, fraud or undue means.
The court is aware that, in one opinion, it holds that (1) waiver of arbitration is an arbitrable issue not to be litigated prior to arbitration; and (2) the State's contention that the contractor has waived his right to require arbitration is without support in this record. Four reasons suggest the advisability, if not the consistency, of this action. (1) The Court of Appeal found a waiver. (2) The record is before us. (3) *677 Further unnecessary delay while waiver is thrashed out by the arbitrator is avoided. (4) Finally, further review of the question of waiver in this case in the judicial system is obviated.
The State argues for the first time that a valid agreement to arbitrate never existed between the State and Elliott, because the Louisiana legislature did not expressly authorize the Capital Outlay Budget Board ("Board"), the legal predecessor of the Division of Administration, State of Louisiana, to refer any matter to arbitration. The State's argument traces the recent Court of Appeal decision of Landis Construction Co., Inc. v. Health Education Authority of Louisiana, 359 So.2d 1045 (4th Cir. 1978), which this court granted writs to review. In Landis, the Court of Appeal held that the stipulation for arbitration of disputes in a construction contract between a business corporation and a governmental agency was unenforceable where neither the corporation's nor the public agency's resolution authorizing contract included express authority to stipulate for arbitration.
Pretermitting the argument that the law of mandate applies between the state and a public corporation, such as HEAL in Landis, which decision is not final yet, in the matter before us the State has ratified the contract. The State argues that the Board was a mandatory of the legislature without authority to bind it to arbitration under C.C. 2997; but C.C. 3010 provides that when a mandatory exceeds his power he is bound by his act "in his individual capacity." The contractual duty to arbitrate was an obligation incurred by the Board, and that obligation was transferred by Act 164 of 1973 along with all of the Board's powers, duties and functions to the Division of Administration, and the duty to arbitrate is to be "preserved and discharged by the Division of Administration" in accordance with R.S. 39:1410E.[6] In effect, this statute that transferred the duties of the Board to the Division of Administration was a ratification of the Board's contracts. C.C. 1840 and 3010. See, Acadian Production Corp. of La. v. Savanna Corp., 222 La. 617, 622-626, 63 So.2d 141 (1953).
Elliott's argument that the Federal Arbitration Act applies to this contract because it involves interstate commerce lacks merit. The contract specifically provided that the law of the project site governs. (Art. 7.10.1 of AIA contract A201). See also George Engine, supra.
R.S. 9:4203 requires a Louisiana court, at the request of an aggrieved party, to order the parties to arbitration in accordance with the terms of their arbitration agreement after the court finds (a) that an arbitration agreement was made and (b) that the opponent failed or refused to comply. These are the only triable issues in a suit to enforce an arbitration agreement. Bartley, 302 So.2d at 281; Domke on Commercial Arbitration, § 17.02 (1968).
For these reasons, the judgment of the Court of Appeal is reversed, and the judgments of the district court are reinstated, at the cost of the respondent, insofar as permitted by law.
NOTES
[1] R.S. 9:4203 provides in part:

"The party aggrieved by the alleged failure or refusal of another to perform under a written agreement for arbitration, may petition any court of record having jurisdiction of the parties, or of the property, for an order directing that the arbitration proceed in the manner provided for in the agreement. . . .
The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, the court shall issue an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the arbitration agreement or the failure or refusal to perform is an issue, the court shall proceed summarily to the trial thereof."
[2] R.S. 9:4201 provides:

"A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
[3] Specifically, the court in Breaux, 230 La. at 234, 88 So.2d at 38, defined waiver as:

"Though there are various definitions of the term `waiver,' it can be comprehensively defined as a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed. It is recognized that the terms `waiver' and `estoppel in pais' are closely related, the line of demarcation between them being slight, both partaking of the same elements and essentially the same relief."
and reasoned concerning waiver:
"The doctrine of waiver or estoppel contravenes the legal rights of the person sought to be estopped, and in some instances stays the operation of the usual proceedings in the adjustment of rights of individuals and for that reason should, in every instance, be applied with great care and caution. Our courts and other jurisdictions universally hold that this doctrine should be applied only in exceptional cases where its application is necessary to effectuate justice or prevent injustice, and should not be applied where it will serve as an instrument of, or operate as, a fraud, be against good conscience, working injustice or accomplish a wrong. Gonsoulin v. Equitable Life Assurance Society of the United States, 152 La. 865, 94 So. 424; C.J. Sec., Vol. 31, p. 242 et seq.; 42 C.J.S. p. 380, 92 C.J.S. Waiver p. 1044."
[4] In Vespe Contracting Co. v. Anvan Corp., 399 F.Supp. 516 (E.D.Pa.1975), on the merits of waiver, the court held that there had been no waiver of arbitration, stating:

". . . We hold that there has not been a waiver of arbitration in this case. Waiver of the right to arbitration is not to be lightly inferred. . . . Unless one's conduct has gained him an undue advantage or resulted in prejudice to another, he should not be held to have relinquished the right. . . . The mere filing of a complaint or answer, without resultant prejudice to the objecting party, will not justify a finding of waiver. . . ." (Citations omitted). Vespe, 399 F.Supp. at 522.
In re Tsakalotos Navigation Corp., 259 F.Supp. 210 (S.D.N.Y.1966), on the merits of the waiver issue, the court found no waiver existed by the mere filing of a lawsuit and reasoned that the court must look to a party's proof that the action taken was not inconsistent with the right to demand arbitration at a later time. In other words, the court found that while the joining of issue in a law suit will usually be inconsistent with arbitration, it does not follow that it will in all instances be so. The court concluded that even if the conduct of the petitioner in filing other proceedings was questionable, the court could not say that the conduct was clearly inconsistent with the right to arbitrate and ordered the parties to proceed to arbitration.
In Denihan v. Denihan, 34 N.Y.2d 307, 357 N.Y.S.2d 454, 313 N.E.2d 759 (1974), the New York court confronted a similar situation where a party invoked arbitration and then filed court proceedings. The court in Denihan reasoned that the claims in the various arbitrations and court actions arose from the same shareholders' agreement, but the claims were separate and distinct. The court held that as to claims separate and distinct, no waiver of arbitration may be implied from the fact that resort has been made to the courts on other claims arising under a common agreement which remains in full force and effect. Denihan, 357 N.Y.S.2d 454, 313 N.E.2d at 760-61, and the cases cited therein. Also, in the Board of Education v. Brentwood Teachers Association, 79 Misc.2d 758, 361 N.Y.S.2d 570, 577 (1974), the court reasoned that waiver cannot be found unless the claims sought to be redressed in the judicial proceedings embrace the same issues for which arbitration is sought. See also, Farrell Marine Devices, Inc. v. Lykes Bros. Steamship Co., 299 F.Supp. 1270 (E.D.La.1969).
[5] The arbitration agreement provided:

"7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraph 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof." (Emphasis added).
[6] R.S. 39:1410E provides:

"The obligations heretofore incurred by the State Bond and Building Commission, the Capital Construction and Improvement Commission, the Capital Outlay Budget Board and the State Bond Commission in connection with any construction contract or agreement shall be preserved and discharged by the Division of Administration."