**OCEAN INDUSTRIES, INC., and Marine Transportation Co., Ltd., Plaintiffs,**

v.

**SOROS ASSOCIATES INTERNATIONAL, INC., Defendant.**

**No. 70 Civ. 3788 D.N.E.**

United States District Court, S. D. New York.

June 24, 1971.

Cahill, Gordon, Sonnet, Reindel & Ohl, New York City, for plaintiffs.

M. Carl Levine, of Morgulas & Foreman, New York City, for defendant.

EDELSTEIN, District Judge.

## OPINION

Defendant, Soros Associates International, Inc., has cross-moved to dismiss the complaint in this action upon the ground that the issues presented by the complaint are referrable to arbitration,[1] or, in the alternative, to stay the trial of this action until arbitration has been had,[2] and to compel plaintiffs to arbitrate the dispute referred to in the "Demand for Arbitration."[3] Plaintiffs originally moved for a prelinimary injunction to stay arbitration. At the oral argument on plaintiffs' motion and defendants' cross motion, plaintiffs withdrew their motion for a preliminary injunction and opposed the defendant's cross motion. Plaintiffs assert that there is no arbitration agreement in existence. Jurisdiction over the parties is grounded on diversity and the Federal Arbitration Act is invoked.

Prior to January 1968 plaintiff Marine alleges that it was granted an option by Union Carbide Corp. to purchase from Union Carbide its aragonite business in the area of the Bahama Islands. Plaintiff Marine agreed in January 1968 with defendant Soros that Soros would undertake to furnish certain preliminary engineering services in connection with the mining of aragonite in one location in the waters adjacent to the Bahama Islands. Subsequent to January 1968, plaintiff Ocean acquired the aragonite business. It is further alleged that Soros continued to perform services pursuant to the January 1968 agreement with Marine. Ocean made certain payments to Soros for work performed. On August 20, 1970, plaintiffs Marine and Ocean received, at their offices in Florida, a "Demand for Arbitration." The "Demand for Arbitration" alleged the existence of a written contract, dated January 9, 1968, between Soros and plaintiffs which provided for arbitration

---

1. Pursuant to Rule 12(b) (1) of the Fed. R.Civ.P.

2. Pursuant to 9 U.S.C. § 3.

3. Pursuant to 9 U.S.C. §§ 2, 4, 6.

of any disputes arising from the contract. In the "Demand for Arbitration" Soros alleged that the plaintiffs failed to pay certain amounts due and owing under the alleged contract, and that plaintiffs further breached their alleged contract with Soros by refusing to permit Soros to proceed with the "final" engineering work allegedly provided for in the January 9th contract. Shortly after service of the "Demand for Arbitration" plaintiffs commenced an action for declaratory judgment. Plaintiffs seek a declaration that they are not liable for any part of the money claimed by Soros, that Soros is not entitled to proceed with any further work under the alleged contract, and that there exists no contract for "final" engineering work.

Plaintiff Marine and defendant entered into negotiations prior to January 1968 concerning the preparation by defendant of a preliminary engineering report concerning the feasibility of using an offshore terminal for the mining and loading of aragonite, deposits in the Bahamas. By a letter dated January 9, 1968, Soros Associates set forth its formal proposal for furnishing the preliminary engineering services. The letter stated that it was Soros' policy to make its "basic know-how" available on the basis that "if the project eventually proceeds onto the final design and construction phase [Phases II, III and IV] substantially in accordance with our design scheme," Soros would continue to be responsible for the later stages of the engineering work. The proposal also stated that "the engineering services for Phase II and Phase III would be performed in accordance with the 'Standard Form of Agreement,' enclosed." (Defendant's Notice of Cross-Motion, Exhibit # 1.) Enclosed with the proposal was the "Standard Form of Agreement Between Owner and Engineer for Professional Services" issued by the National Society of Professional Engineers. The "Standard Form" enclosed in the January 9, 1968, proposal contained certain proposed modifications which had been made and initialed by Paul So-

ros. The Standard Form, however, was not signed.

By a letter of January 29, 1968, plaintiff Marine rejected some offers set forth in defendant's letter of January 9th and authorized only a preliminary study. The Standard Form of Agreement was not signed by the plaintiffs or returned with the January 29th letter. Subsequent to January 29, 1968, at the request of defendant, Mr. Hans Hvide, acting on behalf of plaintiff Marine, also initialed the proposd modifications made by Mr. Paul Soros in the Standard Form. These modifications dealt with performance of the engineering services for Phases II and III and for compensation for those services.

It does not appear to be disputed that a document labeled "Standard Form of Agreement Between Owner and Engineer for Professional Services," (the "Standard Form") contains a clause which reads:

"6.4 Arbitration

"6.4.1 All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law."

There is a dispute, however, as to whether the "Standard Form" and the arbitration clause contained therein were a part of the alleged contract upon which this action is based. Plaintiffs, opposing the motion, contend that there was no agreement to arbitrate. There is no claim of fraud, misrepresentation, or deceit.

In passing upon a Sec. 3 application for a stay while the parties arbitrate, a federal court may consider only those issues relating to the making and performance of the agreement to arbitrate. Prima Paint v. Flood & Conklin, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d

1270 (1967). Arbitration is a creature of contract. United Steelworkers of America v. American Manufacturing Company, 363 U.S. 564, 571, 80 S.Ct. 1343, 4 L.Ed.2d 1403. The issue on this motion is whether there was mutual assent to the arbitration agreement. Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978 (2d Cir. 1948).

If the "Standard Form" had been signed by the parties it would be clear that it constituted an agreement and that the parties intended to be bound by all the terms thereof, including the arbitration provision. However, the "Standard Form" never was signed by any party. Nonetheless, an agreement in writing sufficient for enforcement as an agreement to arbitrate disputes does not have to be signed or subscribed by the parties. In Fisser v. International Bank, 282 F.2d 231, 233 (2d Cir. 1960) it was stated that " * * * [P]arties can become contractually bound absent their signatures. It is not surprising then to find a long series of decisions which recognize that the variety of ways in which a party may become bound by a written arbitration provision is limited only by generally operative principles of contract law." *See* Garnac Grain Company, Inc. v. Nimpex International, Inc., 249 F.Supp. 986 (S.D.N.Y.1964).

Therefore, the issue for the court's determination is whether there was mutual assent to be bound by the arbitration provision contained in the "Standard Form." An examination of the January 9th proposal establishes that the Standard Form was nothing more than a referent for determining the scope of possible future engineering services and the compensation to be paid. The defendant's letter of January 9th states: "The engineering services for Phase II and Phase III would be performed in accordance with the 'Standard Form of Agreement,' enclosed." Accordingly, the parties would look to the modified Standard Form to determine how engineering services would be performed, upon the happening of a contingency—namely, Soros Associates retention as project engineers. There is no statement or suggestion in the January 9th letter that the Standard Form was to be used for any other purpose, nor that it would constitute an agreement between the parties governing work performed during the primary design phase.

Defendant has failed to carry its burden of proving the existence of an agreement in writing for arbitration. Accordingly, the defendant's motions to stay trial of this action pursuant to 9 U.S.C. § 3, or, in the alternative, to dismiss the complaint in this action, are denied.

Defendant's motion to compel arbitration pursuant to 9 U.S.C. § 4 also is denied. This court is not unmindful of the judicial policy which favors the operation of the arbital process. See generally Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978 (2d Cir. 1942); United Steelworkers of America v. American Manufacturing Company, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Nowhere in its oral argument or its memorandum of law does the defendant discuss the fact that this is also a Section 4 proceeding. (9 U.S.C. § 4.) While not specifically abandoning this aspect of the motion defendant practically did nothing on this point. In any event, defendant did not show this court where a genuine issue existed as to the making of the agreement for arbitration. Defendant's arguments and briefs were barren on the subject. The Arbitration Act explicitly imposes upon the court the duty to determine if the issue of "the making of the agreement for arbitration" is in dispute.[4] If the issue of the making of

4. 9 U.S.C. § 4.

the agreement for arbitration is found to be genuine, after the court has examined the record, the court must summarily order a trial of that issue. Tubos De Acreo De Mexico, S. A. v. Dynamic Shipping, Inc., 249 F.Supp. 583, 587 (S. D.N.Y.1966). Almacenes Fernandez, S. A. v. Golodetz, 148 F.2d 625 (2d Cir. 1945), held that: "To make a genuine issue entitling 'the party raising the question' to a trial" under § 4 of the Arbitration Act, that party must take an "unequivocal" position and produce "some evidence * * * to substantiate" that position. In *Almacenes* the court concluded that there had been a failure to raise "a genuine issue" which was equated with "a substantial issue." In the case at bar defendant has merely alleged at the hearing held before the court that there was an agreement to arbitrate based on the fact that the defendant mailed a document containing an arbitration agreement to plaintiff Marine. The defendant has not made a sufficient showing to proceed with a trial on the issue of the making of an arbitration agreement. Accordingly, this motion to compel arbitration is denied without prejudice.

So ordered.