**BIGGE CRANE AND RIGGING CO.,** a division of Bigge Drayage Co., Plaintiff,

v.

**DOCUTEL CORPORATION et al.,** Defendants.

No. 72–C–1541.

United States District Court, E. D. New York.

April 26, 1973.

Havens, Wandless, Stitt & Tighe, New York City, by Paul M. Brown, Philip Gitlen, New York City, of counsel, for plaintiff.

Aranow, Brodsky, Bohlinger, Benetar, Einhorn & Dann, New York City, by Anthony L. Tersigni, Richard N. Gray, New York City, of counsel, for defendant Docutel Corp.

## MEMORANDUM AND ORDER

JUDD, District Judge.

In this diversity contract action, defendant Docutel Corporation has moved for an order directing. plaintiff to submit its claim to arbitration, and staying the action pending such arbitration. The parties have stipulated to adjourn the taking of depositions and the production of documents until after the decision on this motion.

### Facts

Plaintiff entered into an agreement dated September 9, 1971 with defendant Winston-Donovan, a joint venture acting as agent for defendant Docutel Corporation, to do certain work on the installation of Docutel's Telecar Outbound Baggage Handling System at the expanded terminal building of defendant Pan American World Airways, Inc. (Pan Am) in the John F. Kennedy International Airport. The agreed compensation was to be $671,000.

Docutel had made a General Contract with Pan Am in June 1970 for the manufacture, delivery and installation of the baggage handling system. Thereafter in January 1971, defendants Winston Bros. Company and Donovan Construction Company of Minnesota entered into a joint venture named Winston-Donovan,

which agreed to assist Docutel in the planning and installation of the baggage handling system and the coordination of the subcontractors' work.

The General Contract between Docutel and Pan Am included an arbitration clause among its General Conditions. Article XVIII headed *Insurance and Liabilities* contains the arbitration clause in question:

### H. *Arbitration*

All disputes or controversies arising under, out of, in connection with, or in relation to this Agreement which cannot be resolved between the parties direct shall be finally settled by arbitration, to be held at New York, New York, in accordance with the Commercial Arbitration Rules of the American Arbitration Association. . . .

In the September 9, 1971 contract between plaintiff and Winston-Donovan, designated Subcontract No. 4, plaintiff is designated as the Subcontractor. The Subcontract, signed by plaintiff and Winston-Donovan and approved in writing by Pan Am and Docutel, states on the very first page:

Whereas, Subcontractor acknowledges that it is familiar with the terms and conditions of the General Contract and that the General Contract as hereinabove defined is a part hereof and is *incorporated as a part of this Subcontract as though set forth in full herein;* and

Whereas, the parties are desirous of entering into a Subcontract whereby Subcontractor shall undertake the performance of a part of the work to be done under the General Contract. . . . (Emphasis added).

A second agreement between plaintiff and Winston-Donovan dated May 5, 1972, and designated Subcontract No. 5, contained the same language. The agreed compensation was to be $16,241.-25.

The complaint sets forth that on or about August 1, 1972 plaintiff had completed 99 percent of its work under Sub-

contract 4, 100 percent of its work under Subcontract 5, and all agreed upon extra work, but that defendants failed to make payments of the money remaining due. A supporting affidavit asserts that Winston-Donovan and Docutel were progressively in arrears of payment from the spring of 1972, that in August 1972 plaintiff could not get a schedule from defendants for the completion of the insignificant amount of remaining work, and that plaintiff was forced to leave the job-site in November 1972 because of defendants' breaches of contract.

Plaintiff's executive vice-president asserts that no mention was made of the arbitration clause prior to the filing of the complaint in November 1972 and that he was not informed about it until January 1973, just before Docutel served the pending motion.

The complaint in its first count asks for $70,000 balance due under the contracts, $120,000 for extra work, and $50,000 for damages, a total of $240,000. Other counts ask for the same amount as *quantum meruit*, for $50,000 from Pan Am and Docutel for damages for negligent failures on defendants' part, and for $190,000 from Pan Am and Docutel as unjust enrichment.

Defendants obtained extensions of time to respond to the complaint until February 1, 1973. Meanwhile, plaintiff served a notice to depose six officers or employees of Docutel and to obtain inspection of contracts, correspondence, memoranda, job records, audit reports, and other documents. A stipulation suspending discovery was signed on January 22, 1973 and the motion papers were served on February 1, 1973.

Plaintiff asserts that it has been given no explanation by Docutel of the reason it has not been paid for the work it performed and that other subcontractors of Docutel and Winston-Donovan have not been paid, and implies that the purpose of the demand for arbitration is primarily to delay the day when Docutel will have to pay its bills. Docutel in its papers in support of its motion for a

stay has failed to disclose any defenses which it may have to plaintiff's claim for payment for the work it has done.

Pan Am filed an answer on March 19, 1973, with a cross-claim against Winston-Donovan and its constituent companies.

### Discussion

Docutel's motion presents two issues: first, the duty to arbitrate; and second, the right to discovery in aid of arbitration.

### Arbitration

Federal law supports the duty to arbitrate when a contract provides for arbitration. The statute (9 U.S.C. § 3) provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

■ The motion to compel arbitration requires only a determination (1) whether there is an agreement to arbitrate, (2) whether there are arbitrable claims, and (3) whether there has been a waiver of the right to arbitration.

■■ 1. Whether there is an agreement to arbitrate is a matter governed by federal law, including the interpretation and construction of the contract. Coenen v. R. W. Pressprich & Co., 453 F.2d 1209 (2d Cir. 1972); Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382, 385 (2d Cir. 1961). Diversity jurisdiction alone is not sufficient to make federal law applicable without an interstate commerce aspect to the transaction; but a contract between a California plaintiff and a Texas-based corporation to do construction work at a major airport in New York has a sufficient interstate aspect. Cf. Metro Industrial Painting Corp. v. Terminal Construction Co., supra, 287 F.2d at 384.

■ The federal policy as illustrated by the cited cases, is to construe arbitration clauses liberally, to find that they cover disputes reasonably contemplated by the language, and to resolve doubts in favor of arbitration.

■ Plaintiff contends that the arbitration clause was "buried" in the contract and that there was no meeting of the minds on this clause. But plaintiff cannot maintain that it is an unsophisticated party or that the agreement was entered into under fraud or duress or other than at arm's length.

■■ The focus of this court is not on whether there was subjective agreement to all clauses in the underlying contract but whether there was agreement to the contract embodying the clause in question. An agreement in writing sufficient for enforcement as an agreement to arbitrate disputes does not have to be signed or subscribed by the parties. Fisser v. International Bank, 282 F.2d 231 (2d Cir. 1960); see Ocean Industries, Inc. v. Soros Associates International, Inc., 328 F.Supp. 944, 947 (S.D.N.Y.1971). It is of no avail to plaintiff that the arbitration clause was originally part of the contract signed only by defendants Docutel and Pan Am. The clause was incorporated explicitly along with all other general conditions and the subcontract making specific reference to the incorporation was signed by plaintiff. There is a valid arbitration clause. Universal Oil Products Co. v. S. C. M. Corp., 313 F.Supp. 905 (D. Conn.1970); Howard Hill, Inc. v. George A. Fuller Co., Inc., 473 F.2d 217 (5th Cir. 1973).

■ 2. A dispute has arisen between the plaintiff and Docutel concerning completion of performance, payment

for extra work as well as for work done pursuant to the underlying contract, and negligent actions on the part of the defendants. Under such circumstances there is a controversy or claim "arising under, out of, in connection with, or relating to" Subcontracts Nos. 4 and 5 and which the parties have agreed to submit to arbitration. See Universal Oil Products Co. v. S. C. M. Corp., *supra*, 313 F. Supp. at 906 and cases cited therein. The duty to arbitrate is not diminished by the fact that the claim of one of the parties may be lacking in merit. Warren Brothers Co. v. Cardi Corp., 471 F. 2d 1304 (1st Cir. 1973); J. S. & H. Construction Co. v. Richmond County Hospital Authority, 473 F.2d 212 (5th Cir. 1973).

■ 3. Plaintiff's claim of waiver is based only on delay in calling for arbitration. Much more was shown in cases where a defense of waiver was sustained by the courts. Demsey & Associates v. S. S. Sea Star, 461 F.2d 1009 (2d Cir. 1972) (answer on the merits, motion for cross-claim, participation in discovery, failure to move for a stay, and trial on the merits).

In the case on which plaintiff relies, a waiver was found from the fact that the parties seeking a stay had previously filed an answer and a counterclaim, taken the deposition of an official of the adversary, and procured the production of records. Cornell & Co., Inc. v. Barber & Ross Co., 123 U.S.App.D.C. 378, 350 F.2d 512 (1966).

The rule in this circuit as stated by Judge Friendly in Chatham Shipping Co. v. Fertex Steamship Corp., 352 F.2d 291, 293 (2d Cir. 1965), is that

The earliest point at which preclusion may be found is when the other party files an answer on the merits.

Parties who participated in litigation far more than Docutel in this case have been held not to have waived their right to arbitrate. Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir. 1968); General Guaranty Insurance Co. v. New Orleans General Agency, Inc., 427 F.2d 924 (5th Cir. 1970).

In the present action, having moved for an order directing arbitration before filing an answer or commencing any discovery, Docutel cannot be said to have waived its right to compel arbitration.

*Discovery*

Although plaintiff must submit to arbitration, the question of its right to discovery remains for determination. The authorities are in conflict on the point.

The stay authorized by statute is relatively narrow. Section 3 of Title 9 directs that when suit is brought on any issue referrable to arbitration, the court

shall on application of one of the parties stay *the trial of the action* until such arbitration has been had. . . . (Emphasis added).

■ A stay may be conditioned on prompt conclusion of the arbitration proceedings. Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Co., 339 F. 2d 440, 441, 442 (2d Cir. 1964); see also Tepper Realty Co. v. Mosaic Tile Co., 259 F.Supp. 688 (S.D.N.Y.1966).

The distinction between trial and discovery was made in dictum in Donahue v. Susquehanna Collieries Co., 49 F. Supp. 843, 844 (M.D.Pa.1943), where the court said:

The authority conferred upon the Court by this section is clearly limited to staying *the trial* of the action and does not authorize a general stay of the proceedings. (Emphasis from original).

The district court's holding that the agreement did not come within the terms of the United States Arbitration Act and that a stay should be denied was reversed by the Court of Appeals, without discussion of the extent of the stay. 138 F.2d 3 (3d Cir. 1943). After the district court on remand entered an order staying proceedings and specifying the issues to be arbitrated (66 F. Supp. 588 (M.D.Pa.1946)), the Court of Appeals again reversed (160 F.2d 661 (3d Cir. 1947)), on the ground that the court should not specify the issues for

arbitrators, and it directed (at p. 664) that

> The cause is remanded with directions to stay *the trial* until arbitration has been had. (Emphasis added).

Another holding permitting discovery in aid of arbitration is International Assoc. of Heat & Frost Insulators & Asbestos Workers Local 66 v. Leona Lee Corp., 434 F.2d 192, 194 (5th Cir. 1970), where the court stated:

> Also, the District Court did not err when it specifically made available to the parties federal discovery procedures "to the extent necessary for the presentation of matters submitted for Trade Board and Arbitration determination." Such order is consistent with the District Court's retention of jurisdiction and effectuates the policy favoring arbitration. (Footnote omitted).

See also Steamship Co. of 1949, Inc. v. China Union Lines, 123 F.Supp. 802 (S.D.N.Y.1954) (contempt in disobedience of order for depositions issued by Texas District Court).

In a contrary decision, another district court extended its stay to all proceedings. Dickstein v. duPont, 320 F.Supp. 150, 154 (D.Mass.1970). The Court of Appeals affirmed the order staying proceedings, but its opinion dealt only with the question whether an employee of a stock exchange firm was bound by the arbitration provisions incorporated into his employment application. 443 F.2d 783 (1st Cir. 1971).

Other cases indicate reluctance to permit discovery except for special reasons. Matter of International Union of Electrical, Radio & Machine Workers, AFL–CIO v. Westinghouse Electric Corp., 48 F.R.D. 298 (S.D.N.Y.1969) (permitted on arbitrability, not on the merits); H. K. Porter Co., Inc. v. Local 37 United Steelworkers of America, AFL–CIO, 400 F.2d 691, 696 (4th Cir. 1968) (not an abuse of discretion to quash a notice of deposition relating to the merits); Penn Tanker Co. v. C. H. Z. Rolimpex, 199 F.Supp. 716, 718 (S.D.N.Y.1961) ("except, perhaps, upon a showing of true necessity because of an exceptional situation"); Matter of Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co., 20 F.R.D. 359 (S.D.N.Y.1957) (ex parte order to take depositions, with no action pending).

The issue has not been treated in any opinion of the United States Supreme Court or the Second Circuit Court of Appeals.

Even in labor matters, the absence of discovery has been criticized as a throwback to the outmoded "sporting theory of justice." Jones, The Accretion of Federal Power in Labor Arbitration—The Example of Arbitral Discovery, 116 Penna.L.Rev. 830, 837 (1968).

The help which pretrial discovery might give in arbitration proceedings has been discussed by a leading authority on arbitration, who stated (Bernstein, Private Dispute Settlement, 1968, pp. 141–142):

> Few arbitral arrangements provide for prehearing formalities whose purpose is to enable the other side to prepare for the hearing. Of course, in a labor-management dispute the parties presumably have explored each other's reasons and proof during the several stages of the grievance procedure. But even that does not enable the other to anticipate and plan for the witnesses and proof actually adduced. This can mean that hearings are less compact and the proof less orderly than if parties exchanged witness lists and brief summaries of testimony to be proffered. On occasion, adjournments may be necessary to overcome surprise or the colorable claim of it (a particular problem where state statutes—assuming they could be applied—make improper refusal to grant continuances a ground for vacating an award).

The federal Act treats refusal of a reasonable postponement as arbitral misconduct, which may justify vacating an award. 9 U.S.C. § 10(c).

■ Discovery in arbitration proceedings may be directed by the arbitrators. See Matter of Katz and Burkin, 3 A.D.2d 238, 160 N.Y.S.2d 159 (1st Dept. 1957). In this case there will have been considerable delay by the time the elaborate proceedings of the American Arbitration Association for the selection of arbitrators have been completed; and the arbitrators, selected for this particular case, may be under some pressure to complete their task promptly. On the other hand, discovery proceedings in the court action can go forward while the selection of arbitrators and scheduling of a hearing is under way.

The New York rule, at least in the First Department, seems to be that the court has power to permit examinations before trial in arbitration proceedings, but that there must be a showing of necessity rather than of mere convenience. Matter of Katz and Burkin, *supra*, 3 A.D.2d 238, 160 N.Y.S.2d 159 (1st Dept. 1957); Motor Vehicle Accident Indemnification Corp. v. McCabe, 19 A.D.2d 349, 243 N.Y.S.2d 495 (1st Dept. 1963); Avon Converting Co., Inc. v. Home Insurance Co., 196 Misc. 886, 93 N.Y.S.2d 90 (S.Ct.N.Y.Co.1949).

The court recognizes the federal policy to interpret the United States Arbitration Act "so as to further rather than impede, arbitration. . . ." Signal-Stat Corp. v. Local 475, 235 F.2d 298, 303 (2d Cir. 1956). It must also be recognized, however, that the present federal rules governing pretrial discovery were initiated, after the original Arbitration Act, as an aid in reaching the truth and as a means of reducing both the length of trials and the element of surprise. These goals may be of equal help in arbitration, as well as court trials.

Arbitration is not a separate proceeding independent of the courts, as was sometimes thought. The courts are brigaded with the arbitral tribunal in proceedings to compel arbitration or stay judicial trials, proceedings to enforce or quash subpoenas issued by arbitrators (*e. g.*, Matter of Oceanic Transport Corp. v. Alcoa Steamship Co., Inc., 129 F.Supp. 160 (S.D.N.Y.1954), and proceedings to enforce or set aside arbitral awards.

■ Under the principles outlined above, the court believes that it should exercise discretion to permit discovery in this case because (1) discovery is particularly necessary in a case where the claim is for payment for work done and virtually completed, and the nature of any defense is unknown; (2) the amounts involved are so substantial that any expense in taking depositions is relatively small; (3) the action has proceeded to such a point that the taking of depositions can probably be accomplished without delaying the arbitration; and (4) only one of the five defendants has joined in the motion to stay the trial.

The court may not have available the normal sanctions under F.R.Civ.P. 37 for failure to take part in discovery proceedings. The arbitrators, however, may be able to devise sanctions if they find that Docutel has impeded or complicated their task by refusing to cooperate in pretrial disclosure of relevant matters.

It is ordered:

(1) That the motion of defendant Docutel for an order directing plaintiff to submit its claim to arbitration is granted;

(2) That the trial of this action is stayed pending the prompt completion of arbitration proceedings, without prejudice (a) to the rights of plaintiff and defendants to utilize the pretrial discovery procedures of the Federal Rules of Civil Procedure in a manner which does not delay the course of the arbitration, and (b) to the modification or dissolution of the stay if arbitration does not proceed expeditiously;

(3) That the time of defendant Docutel Corporation to answer the complaint is extended for ten days after the date of this Memorandum and Order; and

(4) That depositions proceed at 10:00 a. m. on May 7, 1973 at Room 130 of the federal Courthouse unless a different time or place is agreed upon by the parties or fixed by the court.