**VESPE CONTRACTING CO.**

v.

**ANVAN CORPORATION.**

Civ. A. No. 75–610.

United States District Court,
E. D. Pennsylvania.

July 24, 1975.

Victor Wright, Philadelphia, Pa., for plaintiff.

Charles V. Stoelker, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

This is a diversity contract action in which defendant, Anvan Corporation ("Anvan"), has moved for an order staying all proceedings pending plaintiff's submission of its claim to arbitration. Plaintiff, Vespe Contracting Co. ("Vespe"), was the subcontractor engaged by Anvan to perform the concrete work for a Holiday Inn under construction in the University City area of Philadelphia, Pennsylvania. Anvan is the general contractor for that project.

A brief history of the dispute between the parties will be helpful in understanding the action taken by this Court on the present motion. On March 3, 1974, Anvan and Vespe entered into a subcontract agreement concerning the aforementioned project. Anvan terminated this contract on February 20, 1975. Anvan then commenced an action against Vespe on February 24, 1975, alleging certain breaches of the contract between them and seeking a temporary restraining order to prevent Vespe from entering the job site. On that same day, without a hearing, this Court granted such a temporary restraining order. Vespe then filed a motion with this Court seeking a stay of Anvan's suit pending arbitration. This motion was never acted upon, however. On February 28, 1975, following a conference before the Court in chambers, Anvan withdrew its suit after informing Vespe that it would no longer be permitted on the job site and that Anvan would complete the job.

Vespe then filed the instant action on February 28, 1975. Vespe seeks injunctive relief preventing Anvan from working, in any way, on those portions of the construction project upon which Vespe performed unless or until a fully itemized statement is provided showing the work that remained to be done as of the time of filing of the suit, as well as any repair work allegedly necessitated by

Vespe's alleged contractual defaults. Additionally, Vespe seeks to have two representatives permitted on the job site to observe the completion of the work on its portion of the project. Vespe's underlying concern is that it will be charged for work it is not responsible for, or has already performed adequately, and that it will be unable to monitor the expenses which will be charged against it out of the "retainage" held by Anvan.

Anvan was granted two extensions of time within which to plead to the complaint. During that period, on April 1, 1975, Anvan's original counsel withdrew from the case and its current counsel entered his appearance. On April 10, 1975, Anvan's new counsel filed the motion for a stay pending arbitration which is now before the Court. Claiming its original position concerning the propriety of arbitration was incorrect, Vespe now opposes this course of action on the grounds that the contract between the parties does not provide for arbitration and that, in any event, Anvan has waived its right to arbitration.

Anvan contends that authority to stay this action is found in Section 3 of the United States Arbitration Act, 9 U.S.C. A. § 3.[1] In *Bernhardt v. Polygraphic Company*, 350 U.S. 198, 202, 76 S.Ct. 273, 100 L.Ed. 199 (1956), the Supreme Court held that the stay made available by Section 3 reaches only those contracts covered by Sections 1 and 2 of the Act— namely, those involving maritime or interstate commerce transactions. The matter now before the Court is clearly not one in admiralty. Whether the contract between the parties evidenced a transaction involving interstate commerce is not easily resolved. Due to the sparse nature of the record before us, the Court is unwilling to make the initial factual determination necessary to establish that interstate commerce is involved here. *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission*, 387 F.2d 768, 772 (3d Cir. 1967); *United States Fidelity & Guaranty Co. v. Bangor Area Joint School Authority*, 355 F. Supp. 913, 916 (E.D.Pa. 1973).

■ We need rely neither on the United States Arbitration Act nor the Pennsylvania Arbitration Act, 5 P.S. § 161 *et seq.*,[2] however, in order to support a decision to grant a stay of proceedings pending arbitration. "Such a remedy is one which is within the inherent power of a court and does not require statutory authority." *Merritt-Chapman, supra*, 387 F.2d at 773. With our power to grant a stay thus acknowledged, we will now proceed to consider the appropriateness of such action in the instant case.

■ A motion to compel arbitration presents a court with three basic questions to resolve: (1) whether there is an agreement to arbitrate; (2) whether there are arbitrable claims in issue; and (3) whether there has been a waiver of the right to arbitration. *Bigge Crane & Rigging Co. v. Docutel Corporation*, 371 F.Supp. 240, 243 (E.D.N.Y. 1973).

1. 9 U.S.C.A. § 3 provides:
"Stay of proceedings where issue therein referable to arbitration

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

2. Vespe has conceded, for purposes of this motion, that the Pennsylvania statute would authorize this Court's granting of a stay. There is a serious question, however, as to whether a federal court has the power to order a stay pending arbitration on the basis of the Pennsylvania Act. As stated above, it is unnecessary to resolve this issue here. For a further explanation of the problem, see the discussion in *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission, supra* at 772–773.

■■ Arbitration is recognized as a matter of contract, and a party cannot be forced to arbitrate something in the absence of an agreement to do so. However, in view of the general policy in favor of arbitration, doubts as to whether an arbitration clause should be interpreted to cover the asserted dispute must be resolved in favor of arbitration unless a court can state with "positive assurance" that this dispute was not meant to be arbitrated. *Hussey Metal Division v. Lectromelt Furnace Division,* 471 F. 2d 556, 557, 558 (3d Cir. 1972).

Plaintiff conceded at oral argument on this motion that if a binding agreement to arbitrate exists between these parties, then the claims involved here are arbitrable. Plaintiff's position, however, is that there is no clause in the contract package between Vespe and Anvan which requires arbitration. Anvan contends that the General Conditions [3] and Supplementary General Conditions to the contract between it and the owner are incorporated into its subcontract with Vespe, and that the duty to arbitrate the present dispute arises out of those documents. Despite some troubling ambiguities in the contractual language, we hold that, under all the circumstances here, there is a binding agreement to arbitrate between these parties.

■ There are two clauses of the subcontract agreement between Vespe and Anvan which, in this Court's view, are of particular importance in determining this issue. They appear in full in the margin.[4] There is clearly no specific clause in the subcontract agreement itself which requires the arbitration sought here. Vespe contends that the absence of such a clause, plus the omission from the schedule of explicitly incorporated "Subcontract Documents" of the General Conditions of the main owner-contractor contract, signifies that arbitration was not the intended method of dispute settlement between Vespe and Anvan. This Court believes, however, that Clause 8 of the subcontract is not determinative of the applicability of the General Conditions to these parties.

The "Subcontract Documents" are only those items which are descriptive of

---

3. The General Conditions of the owner-contractor agreement are actually the "General Conditions of the Contract for Construction," AIA Document A201 (12th ed. 1970), prepared by the American Institute of Architects (attached as Exhibit B to Defendant's motion for stay). They have been fully incorporated into the owner-contractor agreement at page SC–1 (attached as Exhibit A to Defendant's motion for stay).

4. Clause 4 of the subcontract provides:
"DESCRIPTION OF WORK. Subcontractor will perform and pay for all the work, including but not limited to the furnishing of all materials, scaffolding, services, equipment and labor that shall be necessary or required fully to construct, perform and complete the Concrete Work—See Schedule 'D' attached—'Scope of Work'—Items Nos. 1 through 9 (hereinafter called the 'work'), and shall turn over the work to Contractor in good condition and free and clear of all claims, encumbrances and liens for labor and material, all in accordance with the General Conditions, Supplementary General Conditions, Special Conditions, Plans, Drawings, Specifications, Addenda and other documents, if any, (the 'Subcontract Docu-

ments'), prepared by the Architect and/or Engineer ('Architect/Engineer')."
Clause 8 of the subcontract provides:
"SUBCONTRACT DOCUMENTS.
(a) The Subcontract Documents are listed in Schedule 'A', attached hereto, and are hereby specifically incorporated into and made a part of this Subcontract Agreement by this reference.
(b) Subcontractor shall be bound to Contractor by the terms of the Subcontract Documents and shall assume towards Contractor all the obligations and responsibilities that Contractor by the terms thereof insofar as applicable to this Subcontract Agreement assumes towards Owner. Contractor shall be bound to Subcontractor by the terms of the Subcontract Documents and shall assume towards Subcontractor all the obligations and responsibilities that Owner by the terms thereof insofar as applicable to this Subcontract Agreement assumes towards Contractor."
Schedule "A," the designated list of Subcontract Documents, contains reference only to drawings, specifications, addenda, reports, and the Schedule "D" listing of the "Scope of Work."

the actual work to be performed by Vespe. We do not believe that the terms and conditions under which Vespe agreed to perform the work are subsumed under the "Subcontract Documents" heading. For that reason, Clause 8 has no particular relevance to the question of the incorporation of the General Conditions of the main contract. This conclusion is based on several factors. First, the Schedule "A" listing, which supposedly contains all the Subcontract Documents, conforms to this interpretation, as does the context in which the term is used throughout the subcontract agreement. Moreover, in the "Summary of the Work" section of the general contract, under the heading "Work Under This Contract" appears the following statement: "The Work involved is established by the 'Sub-contract Documents'." General Contract, p. 1AO–1 (attached as Exhibit A to Defendant's motion for stay).

We do not lightly dismiss the fact that the subcontract, which is a form agreement prepared by Anvan, fails to specifically incorporate any outside material other than the Subcontract Documents. However, the Court does not believe that this fact alone is enough to dispel the inference raised by Clause 4 of the subcontract that, since Vespe was required to perform, pay for and turn over the concrete work to Anvan "all in accordance with the General Conditions," the General Conditions were intended by the parties to be a part of their agreement. Accordingly, we find that the terms and conditions contained in the main contract are binding on Vespe and Anvan as an incorporated part of the subcontract.

Vespe contends that, even if it is bound by the General Conditions of the main contract, there is still not an agreement requiring the arbitration of this dispute. While we concur that the General Conditions contain no express provision requiring the arbitration of disputes between a contractor and a subcontractor, we nevertheless believe that the contractual language imposes such a duty.

■ Article 5 of the General Conditions relates to subcontractors. Section 5.3.1 states that all work performed for a contractor by a subcontractor shall be pursuant to an appropriate agreement between them which contains, among other things, a provision requiring "that all claims for . . . damages . . . or otherwise with respect to subcontracted portions of the Work shall be submitted to the Contractor . . . in sufficient time so that the Contractor may comply in the manner provided in the Contract Documents for like claims by the Contractor upon the Owner." Contained in the "Miscellaneous Provisions" of the General Conditions is Section .7.10.1, which clearly states: "All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof . . . shall be decided by arbitration. . . ."

■ This Court interprets the above-quoted provisions as indicating the intent of the parties here that they be required to settle their disputes in the same manner as the owner and the contractor—namely, through arbitration (compare Clause 8(b) of the subcontract agreement, pertaining to the Subcontract Documents, quoted in note 4 *supra*). Our conclusion is buttressed by Vespe's own attempt to submit this dispute to arbitration during the pendency of the original suit filed by Anvan. Furthermore, Vespe obtains no comfort from the fact that it did not specifically sign the main contract or the General Conditions. An agreement in writing sufficient for enforcement as an agreement to arbitrate disputes does not have to be signed or subscribed by the parties. It is enough that the General Conditions were incorporated into the subcontract agreement which was signed by Vespe. There is a valid agreement to arbitrate between Vespe and Anvan. *Bigge Crane & Rigging Co. v. Docutel Corporation, supra,* 371 F.Supp. at 243.

■ The only remaining issue concerning the propriety of granting the requested stay is whether there has been

**522**

a waiver by Anvan of the right to arbitration. We hold that there has not been a waiver of arbitration in this case. Waiver of the right to arbitration is not to be lightly inferred. *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir. 1968). Unless one's conduct has gained him an undue advantage or resulted in prejudice to another, he should not be held to have relinquished the right. *Liggett & Myers, Inc. v. Bloomfield,* 380 F.Supp. 1044, 1047 (S. D.N.Y. 1974). The mere filing of a complaint or answer, without resultant prejudice to the objecting party, will not justify a finding of waiver. *Carolina Throwing Co. v. S & E Novelty Corp.,* 442 F.2d 329, 331 (4th Cir. 1971).

The facts in the instant case are clearly distinguishable from those in *Liggett & Myers, Inc. v. Bloomfield, supra,* where Judge Weinfeld found a waiver of arbitration by the movants. In that case, ten months went by between the commencement of the suit and the invocation of arbitration. During that period, despite a change of counsel, the movants not only answered and counterclaimed, but the litigation was proceeding apace. Discovery by all litigants had been well advanced, with an accumulation of thousands of pages of testimony and discovery of hundreds of documents, and it was anticipated that the case would proceed to trial in the immediate future. Judge Weinfeld found that the movants had obtained many benefits from the pretrial discovery process which would not have been available to them if they had seasonably demanded arbitration, and he held that this was sufficient to constitute a waiver.

In contrast, demand for arbitration was made in the present action only six weeks following the filing of the complaint. Moreover, Anvan replaced its original counsel during that period, and the arbitration request followed just ten days after new counsel's entry of appearance. Anvan has neither answered the complaint, nor commenced any discovery, nor done anything else inconsistent with its claimed right to arbitration. *See Bigge Crane, supra,* 371 F.Supp. at 244; *Harman Electrical Construction Co. v. Consolidated Engineering Co.,* 347 F.Supp. 392, 399 (D. Del. 1972). In fact, the only discovery activity which has occurred to date has been initiated by Vespe and has worked to its clear advantage. Anvan cannot be said to have waived its right to compel arbitration.

■ This Court will, accordingly, grant a stay of proceedings in this suit pending arbitration of the underlying dispute. However, the Court will retain jurisdiction over the case and will permit pretrial discovery under the Federal Rules of Civil Procedure to continue until such time as the parties have selected and agreed upon an arbitrator, or panel of arbitrators, and have so notified the Court. *See Bigge Crane, supra.* While the Court, in making available this additional opportunity for discovery, does not wish to bestow upon plaintiff more rights in the arbitral process than the contract provided for, such action seems appropriate in this case in order to insure that any delay which may occur will not work undue hardship. *See Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Company,* 339 F.2d 440, 442 (2d Cir. 1964). As progress continues at the construction site, evidence of Vespe's performance of the concrete work is "disappearing" behind the hotel's interior and exterior wall coverings. For all practical purposes, Vespe's work product will be inaccessible for future inspections. In light of the peculiar circumstances here, we think it proper to allow discovery to proceed at this time. The results of this discovery should be of great assistance during the arbitration proceeding.

While we believe that discovery should not be cut off at this point, the Court expects arbitration to begin within a reasonable time. Continued discovery is predicated on the assumption that neith-

er party will hamper the progress of the arbitration process. *See Nederland-se, supra* at 442; *Bigge Crane, supra,* 371 F.Supp. at 246. In the event that either party is responsible for unjustified delay, the Court will entertain an appropriate motion to modify or vacate the Order filed today with this Memorandum.