**FORD MOTOR COMPANY LIMITED**

v.

**M/S MARIA GORTHON, etc., et al.**

**RAMSAY, SCARLETT & CO., INC.**

v.

**M/S MARIA GORTHON and Ford Motor Company Limited.**

Civ. Nos. Y-74-548, Y-74-1130.

United States District Court,
D. Maryland.

July 29, 1975.

David R. Owen, Baltimore, Md., for Ford Motor Co.

Robert H. Williams, Jr., Baltimore, Md., for Ramsay, Scarlett and Baltimore Stevedoring.

Manfred W. Leckszas, Baltimore, Md., for Rederi AB Gylfe.

Philip O. Roach, Baltimore, Md., for Oriole Ship Ceiling Co.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

The facts of these cases, at this point in the pleadings, are blessedly simple; conflict over the jurisdiction of the court, however, has raised some knotty problems.

On May 21 or 22, 1973, the plaintiff in case Y–74–548, Ford Motor Company, Ltd. [Ford], a British corporation, delivered to the M/S Maria Gorthon, a cargo vessel then berthed in Baltimore and owned by defendant Rederi A/B Gylfe, Gorthons Rederier [Gorthons], a Swedish corporation, 318 rolls of cold rolled steel for transportation to Newport, England. The delivery was pursuant to a voyage charter party entered into between Ford and Gorthons on May 1, 1973.

The coils were loaded, stowed and secured on board the ship by defendants Ramsay Scarlett & Co., Inc. [Ramsay], Baltimore Stevedoring Co., Inc. [Baltimore] and Oriole Ship Ceiling Co., Inc., [Oriole], all Maryland corporations.

On arrival at Newport on June 2, 1973, the coils were seriously damaged. After interim proceedings in London which will be discussed *infra*, Plaintiff Ford sued in Civil No. Y–74–548 for arrest, attachment and garnishment of the M/S Maria Gorthons and judgment against all defendants in the amount of $350,000. Although this action was instituted on May 31, 1974, service of process was withheld.

Meanwhile, on October 15, 1974, Ramsay instituted action Y–74–1130 against the M/S Maria Gorthon and Ford to recover for services rendered in loading the ship and process was mailed October 16, 1974, and received by Ford in England on October 21. Process thereafter issued in Y–74–548 and was served on Ramsay on October 24, 1974.

A hearing was held on June 20, 1975, in which the Court ruled orally on all open motions. This Memorandum and Order will elaborate that oral opinion more fully.

## COMPULSORY COUNTERCLAIM

■ In Y–74–1130, Ford has moved to dismiss the action as to it because the claim should have been asserted as a compulsory counterclaim in case Y–74–548. Fed.R.Civ.P. 13(a) clearly required Ramsay to allege its claim as a counterclaim in Y–74–548. Ramsay does not come within exception (1) of Rule 13's mandate that all claims arising out of the same transaction be plead as a compulsory counterclaim, because Y–74–548 was commenced before Y–74–1130 although service was delayed.[1]

Nevertheless, dismissal of the action without recourse for Ramsay to assert the claim would be entirely unjust in light of the unique chronology of the dates of institution of the two actions and service of process in them. Ramsay has expressed a preference to consolidate the two cases rather than to dismiss Y–74–1130 with leave for Ramsay to amend its counterclaim in Y–74–548. In light of the circumstances, this is an appropriate resolution of the problem. The consolidation will be for both pretrial proceedings and trial, but will leave both cases as distinct causes of action, requiring the entry of separate judgments. *See* Fed.R.Civ.P. 42(a); *Speed Prod. Co. v. Tinnerman Prod., Inc.*, 222 F.2d 61 (2d Cir. 1955).

## ARBITRATION

In its motion to dismiss in Civil Y–74–548, Gorthons argues 1) that the case should be dismissed because the plaintiff has commenced arbitration in London, or, in. the alternative, that 2) the Court should stay its proceedings under the provisions of the Federal Arbitration Act, 9 U.S.C. § 3 (1970) until arbitration already commenced is completed.

The defense stems from a typed addendum to the standard form voyage charter party used by the parties and which reads, with commendable brevity but deplorable ambiguity:

"25. Arbitration, if any, to be held in London."

When Ford learned of the damage to the cargo, it filed a claim brief, and its solicitors mailed Gorthons a letter requesting it to concur in the appointment of an arbitrator. The letter expressly stated that the notice was for the purpose of preserving its right to arbitration because of the one-year statute of limitations governing the commencement of arbitration proceedings. The letter nevertheless expressly reserved Ford's right to institute legal proceedings. Ev-

---

1. Rule 13(a) provides:

    (a) Compulsory Counterclaims. · A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) *at the time the action was commenced* the claim was the subject of another action . . . . (Emphasis added)

idently Gorthons did not reply, which gave Ford the right to apply to the English High Court for appointment of an arbitrator under Section 10 of the English Arbitration Act of 1950, 14 Geo. 6, c. 27, § 10 (1950). Ford has apparently never done so, presumably because it found that through legal proceedings in this jurisdiction, it could gather all parties which it wished to sue in one place.

Gorthons now contends first, that Clause 25 is a binding agreement to arbitrate and second, even if it is not, Ford's letter of May 10, 1974 created a binding agreement which this Court must honor under 9 U.S.C. § 3.

The parties agree that the validity and effect of the arbitration agreement should be determined by the law of its place of execution, England. *Fox v. Giuseppe Mazzini*, 110 F.Supp. 212, 213–14 (E.D.N.Y.1953).

Gorthons contends that the clause, "Arbitration, if any, to be held in London," means "if any disputes arise under this charter party, they shall be referred to arbitration in London." Under this interpretation, "if any" would refer to all possible disputes which might arise between the parties, an antecedent which is clearly not present in the phrase.

In *Tritonia Shipping, Inc. v. South Nelson Forest Prod. Corp.*, [1965] 1 Lloyd's R. 114, the clause "Arbitration to be settled in London" was held to be a binding agreement to arbitrate with no further discussion than as follows:

. . . this clause, brief as it is, could only have the one meaning. It must be expanded, as was submitted before the learned Judge, to mean "Any dispute under this charter party to be settled by arbitration in Lon-

don." I think that was the agreement of the parties. It is binding.

1 Lloyd's R. 114, 117 (Sellers, L. J.). An American court, faced with an identical clause reached the same result, citing only the tendency of English and American courts to give arbitration clauses the broadest possible interpretation. *Fox v. Guiseppe Mazzini*, 10 F. Supp. 212, 214 (E.D.N.Y.1953).[2]

Ford, on the other hand, suggests that the phrase means "if arbitration is elected as a means of resolving disputes which arise, then that arbitration will take place in London." "If any," in this case, would refer to arbitration, as contrasted with litigation.

■ It is the duty of the Court to discern the common intention of the parties. *E. J. R. Lovelock, Ltd. v. Exportles*, [1969] 1 Lloyd's R. 163, 167 (Diplock, L. J.). In spite of the tendency of both English and American courts to favor arbitration, *e. g., Tritonia Shipping v. South Nelson Forest Prod. Corp.*, [1965] 1 Lloyd's R. 114; *Carcich v. Rederi A/B Nordie*, 389 F.2d 692 (2d Cir. 1968), common sense would indicate that clause 25 was meant to give the parties an option to agree to litigate *or* arbitrate.

■ Since the clause is subject to some ambiguity,[3] it is wisest to follow common sense, and apply the ordinary meaning of the words used. *Mendl & Co. v. Ropner & Co.*, [1913] 1 K.B. 27. It is the phrase "if any" which distinguishes the clause in this charter party from the ones in the cases cited above. "If any" implies "should there be any." The antecedent to the words is clearly arbitration. "Should there be arbitration" implies, in turn, that arbitration, *or* something else, might occur. The

2. *See generally* Schmitthoff, Defective Arbitration Clauses, 1975 J.Bus.L. 9. In *Hobbs Padgett & Co., Ltd. v. J. C. Kirkland, Ltd.*, [1969], 2 Lloyds R. 547, cited by Gorthons' solicitor, Butler, the English court upheld a clause which read "suitable arbitration clause" as a binding agreement to arbitrate. Other than as an illustration of the lengths to

which English courts will go to bind parties to arbitration, the case is inappropos here.

3. The clause is nevertheless clear enough to prevent its being jettisoned as void. *See, e. g., E. J. R. Lovelock, Ltd., v. Exportles*, [1969] 1 Lloyd's R. 1963; *Nicolene v. Simmonds*, [1963] 1 Q.B. 543.

thrust of the phrase is not that arbitration will occur to the exclusion of other forms of resolution, but that arbitration, if it occurs, will take place in London. The clause expresses the desire of the parties to arbitrate in London, where arbitration of such disputes has become commonplace, and therefore expert if, in fact, arbitration is requested. Should they choose to litigate, on the other hand, that proceeding could occur anywhere.

Clause 25 did not create a binding agreement to arbitrate; there was instead an unexpressed option to agree to litigate or to arbitrate.

## EFFECT OF THE FEDERAL ARBITRATION ACT

██ In the alternative, Gorthons has requested a stay under 9 U.S.C. § 3, which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

This act applies to arbitration proceedings which are to take place in a foreign jurisdiction. *Shanferoke Coal & Supply Co. v. Westchester Serv. Corp.*, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935).

██ Generally the policy of the Federal Arbitration Act is to promote speedy arbitration and thereby to ease court congestion and relieve the parties from costly litigation, *Aerojet-General Corp. v. American Arbitration Ass'n*, 478 F.2d 248 (9th Cir. 1973).

██ The key word in the statute is "referable." It must now be determined under what conditions claims are "referable to arbitration" when the parties have the option to agree to arbitrate or litigate.

A claim "referable to arbitration," is one in which the parties have bound themselves to arbitrate as a condition precedent to recovery, *Ocean Ind., Inc. v. Soros Assoc. Intern. Inc.*, 328 F.Supp. 944 (S.D.N.Y.1971). Clearly if the option to arbitrate has never been exercised or agreed upon, the parties cannot be forced to arbitrate. Referral of the case to arbitration under those circumstances would deprive the parties of the option. Any contract which provided that option would be a nullity because a court could force the parties to arbitrate in every instance.

Once the option is exercised or agreed upon, however, it may create a binding agreement to arbitrate. Although the Court has been unable to find any English cases on point,[4] English law of offer and acceptance provides some guidelines. The agreement in the charter party was not an option to litigate or arbitrate, but an option *to agree* to litigate or arbitrate. It was analogous to a bid, to which a response constitutes an offer, not an acceptance. *Clifton v. Palumbo*, [1944] 2 All E.R. 497, C.A. The parties had either to agree to one form of procedure bilaterally, or one party must

4. The most similar American case is *Calvine Mills, Inc. v. L. A. Slesinger, Inc.*, 258 F.2d 228 (2d Cir. 1958), where the contract between the parties gave the seller the option of arbitrating any controversy relating to the contract. After a dispute arose the seller did exercise its option to arbitrate. When arbitration bogged down, the seller then took the case to court. The district court held that once the seller had exercised its option to arbitrate it created an agreement to arbitrate which was mutually binding on the parties notwithstanding the fact that there had been no manifestation of assent by the buyer. *Id.* at 230. The court stayed its proceedings and sent the case back for arbitration. Since arbitration was commenced in *Calvine Mills*, the case required a different result than does the case at bar.

have carried a procedure far enough to bind the other to that procedure under the law.

 Ford's letter of May 10, 1974 was a stop-gap to prevent the one-year statute of limitations from running on arbitration; its action merely protected its right to arbitrate. The correspondence between the parties which has been placed before the Court reveals that neither party took the next legal step which would bind them to arbitration; Ford could have done so by applying to the High Court for the appointment of an arbitrator. Gorthons could have done so bilaterally by agreeing to an arbitrator proposed by Ford. Instead, Gorthons' response was in the form of a counterproposal for the appointment of two arbitrators instead of one. *See Roberts & Cooper, Ltd. v. Salvesen & Co.*, [1918] S.C. 794. The negotiations between the parties on the form of resolution was suspended at that point, preventing consummation of the agreement to arbitrate.

The English Limitations Act of 1939, 2 & 3 Geo. 6, ch. 21, § 27 (1939), which provides that arbitration commences for the purpose of that Act by the presentation of a notice by one party to the other, is irrelevant here. The commencement of an action for the purpose of tolling the statute of limitations does not create a binding agreement to arbitrate. This is done, as noted in *Russell on Arbitration*, when there "is a notification to the Arbitrator that he has been appointed in the matter of dispute." *Russell on Arbitration*, 210 (18th ed).

 No binding agreement to arbitrate was ever made between the parties. It is therefore unnecessary for this Court to stay its proceedings under 9 U.S.C. § 3. While unrelated to the technical discussion above, it has remained uppermost in the Court's mind that arbitration might defeat the goal of the Federal Arbitration Act by submitting the parties to greater expense and delay. The parties have noted that the effect of referring the case to arbitration would be only to narrow the case to one plaintiff, Gorthons or Ford, and would require duplicative proceedings in the arbitration process and in this Court. Since economy of time and expense is a factor favoring arbitration, it should also be a reason for denying arbitration when arbitration would defeat the goals it was meant to further.

In accordance with the foregoing, it is, this 29th day of July, by the United States District Court for the District of Maryland, ordered:

1. That defendant Ford's motion to dismiss in case Y–74–1130 be, and the same is, hereby denied;

2. That cases Y–74–548 and Y–74–1130 be consolidated for pretrial procedures and for trial; and

3. That defendant Gorthons' motion to dismiss in case Y–74–548 be, and the same is, hereby denied.