**Florence Ann BUSSEN, Plaintiff,**

v.

**INTERNATIONAL PRECIOUS METALS CORPORATION, a Michigan corporation, IPMC Options, Ltd., a Delaware corporation, Multivest, Inc., a Michigan corporation, Mocatta Metals Corporation, a Delaware corporation, Joseph R. Richardson and Gene DeAngelis, Defendants.**

**No. 86–6658–CIV–LCN.**

United States District Court, S.D. Florida, Fort Lauderdale Division.

Jan. 26, 1987.

Robert L. Beals, of Botos & Oliver, Boca Raton, Fla., Gregory D. Hoffman of Green, Kanefield, Hoffman & Dan Kenbring, Clayton, Md., for plaintiff.

R. Lawrence Bonner, of Greer, Homer, Cope & Bonner, P.A., Miami, Fla., for defendants.

## ORDER ON MOTION TO COMPEL ARBITRATION

NESBITT, District Judge.

This case is before the Court upon the Defendants' Motion to Compel Arbitration [with respect to IPMC OPTIONS, LTD.] and to Stay the Proceedings With Respect to the Other Defendants and the Plaintiff's Response thereto.

Plaintiff commenced this action to recover for losses incurred as a result of commodities trading and for commissions paid to the Defendants. Plaintiff claims she was fraudulently induced to enter into said commodities trading by the Defendants.

The Defendants now seek to stay these proceedings while the Plaintiff's claims against IPMC OPTIONS are submitted to arbitration. Defendants rely on an arbitration agreement entered into by the Plaintiff to support their Motion.

The Plaintiff counters that the document that she signed does not require arbitration of any claims. Plaintiff further asserts that the Defendant IPMC OPTIONS expressly agreed to submit any disputes arising out of her transactions with it to Florida state courts or to the federal courts for the Southern District of Florida.

There are two writings involved in the present dispute. IPMC OPTIONS first sent to the Plaintiff a "Customer Commodity Option Account Agreement and Disclosure Statement Acknowledgment" form (the Account Agreement). The Plaintiff signed and returned this form to the IPMC OPTIONS in February of 1986. Paragraph 7 on page 2 of the Account Agreement states that

> any proceedings concerning disputes, claims or controversies arising out of this Agreement or any transactions with IPMC Options shall be submitted to the jurisdiction of the Courts of the State of Florida or the United States District Court for the Southern District of Florida and that the venue for any action arising from this Agreement or any transaction with IPMC Options shall be in Broward County, Florida.

IPMC also sent to the Plaintiff an "Arbitration Agreement" (attached hereto as Exhibit A). Four days after the Plaintiff signed and returned the Account Agreement to IPMC OPTIONS she signed and returned this Arbitration Agreement.

The Federal Arbitration Act, 9 U.S.C. § 1 et seq., greatly favors the use of arbitration as a mechanism of dispute resolution. However, the first step towards determining whether or not arbitration should be compelled is determining whether or not an agreement to arbitrate was made. *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Bigge Crane and Rigging Co., v. Docutel Corp.*, 371 F.Supp. 240 (E.D.N.Y.1973).

■ Upon a review of the exhibits presented it appears that the parties never entered into a valid agreement to arbitrate. There are two reasons for this conclusion. First is the language of the Account Agreement which states that any disputes between the parties would be submitted to Courts of the State of Florida or the Federal Courts of the Southern District of Florida. This language is very clear, and was on a form prepared by IPMC OPTIONS.

Second, the language of the Arbitration Agreement is as ambiguous as the language of the Account Agreement is clear. The language of the Arbitration Agreement is merely a reprint of the language required to be included in an arbitration agreement by the Commodities Futures Trading Commission (CFTC), Part 180b—Arbitration or Other Disputed Settlement Procedures; CCH Commodity Futures Law Reporter ¶ 3322 Reg. § 180.3(b)(6). There is no agreement to arbitrate included in the writing. The language simply explains that arbitration is sometimes advantageous but does entail the waiver of the right to go to court. There is no clause in the Arbitration Agreement, for example, which states "all disputes arising out of any transaction between the parties shall be submitted to arbitration." Thus, there is no agreement to arbitrate.

■ Arbitration is a matter of contract and a party cannot be forced to arbitrate any claim which he has not agreed to arbitrate. *Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). Additionally, a basic canon of contract construction is that an ambiguous contract is construed against the drafter. *Hurt v. Leatherby Ins. Co.*, 380 So.2d 432 (Fla.1980); *Corso v. Creighton University*, 731 F.2d 529 (8th Cir.1984). Consequently, the Arbitration Agreement signed by the Plaintiff in this case does not compel arbitration of the Plaintiff's claims against IPMC OPTIONS. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Defendants' Motion to Compel Arbitration and to Stay the Proceedings with Respect to the Other Defendants be and the same is DENIED.

# EXHIBIT A

## Arbitration Agreement

THREE FORUMS EXIST FOR THE RESOLUTION OF COMMODITY DISPUTES: CIVIL COURT LITIGATION, REPARATIONS AT THE COMMODITY FUTURES TRADING COMMISSION (CFTC) AND ARBITRATION CONDUCTED BY A SELF-REGULATORY OR OTHER PRIVATE ORGANIZATION.

THE CFTC RECOGNIZES THAT THE OPPORTUNITY TO SETTLE DISPUTES BY ARBITRATION MAY IN SOME CASES PROVIDE MANY BENEFITS TO CUSTOMERS INCLUDING THE ABILITY TO OBTAIN AN EXPEDITIOUS AND FINAL RESOLUTION OF DISPUTES WITHOUT INCURRING SUBSTANTIAL COSTS. THE CFTC REQUIRES, HOWEVER, THAT EACH CUSTOMER INDIVIDUALLY EXAMINE THE RELATIVE MERITS OF ARBITRATION AND THAT YOUR CONSENT TO THIS ARBITRATION AGREEMENT IS VOLUNTARY.

BY SIGNING THIS AGREEMENT, YOU: (1) MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW; AND (2) ARE AGREEING TO BE BOUND BY ARBITRATION OF ANY CLAIMS OR COUNTERCLAIMS WHICH YOU OR IPMC OPTIONS MAY SUBMIT TO ARBITRATION UNDER THIS AGREEMENT. YOU ARE NOT, HOWEVER, WAIVING YOUR RIGHT TO ELECT INSTEAD TO PETITION THE CFTC TO INSTITUTE REPARATIONS PROCEEDINGS UNDER SECTION 14 OF THE COMMODITY EXCHANGE ACT WITH RESPECT TO ANY DISPUTE WHICH MAY BE ARBITRATED PURSUANT TO THIS AGREEMENT. IN THE EVENT A DISPUTE ARISES, YOU WILL BE NOTIFIED IF IPMC OPTIONS INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A VIOLATION OF THE COMMODITY EXCHANGE ACT IS INVOLVED AND IF YOU PREFER TO REQUEST A SECTION 14 "REPARATIONS" PROCEEDING BEFORE THE CFTC, YOU WILL HAVE 45 DAYS FROM THE DATE OF SUCH NOTICE IN WHICH TO MAKE THAT ELECTION.

YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH IPMC OPTIONS. (SEE 17 CFR 180.1-180.5.)

If you elect to submit a claim to arbitration, you must notify IPMC Options in writing of your intent to submit a claim. You will have the opportunity to select a qualified forum for conducting the proceeding at a later date.

Within ten business days after receipt of said notice, IPMC Options must provide you with a list of two or more organizations qualified to conduct arbitrations in accordance with 17 C.F.R. Part 180 and a copy of the rules of each forum selected. The list must include

(i)  the contract market upon which the disputed transaction arose, and

(ii) at least one other organization which will provide you an opportunity to select the location of the arbitration and the selection of mixed panel to hear the arbitration.

IPMC Options shall bear all incremental fees assessed by a mixed panel, unless you are found to have acted in bad faith

**AUTHORIZED ACCOUNT SIGNATURE(S):**

*February 14, 1986*
Date

X *Stan Bussen*
Customer Signature

Date                        Customer Signature

Date                        Customer Signature